1  MICHAEL R. SIMMONDS (SBN 96238)
   msimmonds@snllp.com
2  LIANA MAYILYAN (SBN 295203)
   lmayilyan@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:   (415) 352-2625

6

7  Attorneys for Defendant
   Citibank N.A.

8

9                     UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  GERTI MUHO,                          )  CASE NO.: 4:14-cv-03219-DMR
                                         )
13              Plaintiff,               )  **DEFENDANT'S NOTICE OF**
                                         )  **MOTION AND MOTION TO**
14        vs.                            )  **DISMISS COMPLAINT;**
                                         )  **MEMORANDUM OF POINTS AND**
15                                       )  **AUTHORITIES IN SUPPORT OF**
                                         )  **MOTION**
16  CITIBANK N.A.,                       )
                                         )  Date: August 28, 2014
17              Defendant.               )  Time: 11:00 a.m.
                                         )  Courtroom: 4 - 3rd Floor
18  _____  )
                                         )  The Honorable Donna M. Ryu
19

20

21

22

23

24

25

26

27

28

TO PLAINTIFF PRO SE AND THE COURT:

PLEASE TAKE NOTICE that on August 28, 2014, at 11:00 a.m. in courtroom 4 of the above Court, located at 1301 Clay Street, Oakland, California, the Honorable Donna M. Ryu presiding, Defendant Citibank N.A. ("Citibank") will and hereby does move this Court for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the claims against it in the complaint.

This motion is made on the grounds that the complaint fails to state facts sufficient to constitute a cause of action against Citibank for breach of contract, conversion, trespass to chattels, interference with economic relations, or intentional infliction of emotional distress.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Request for Judicial Notice, the Declaration of Dean Keenan, all other papers on file in this action, and such other and further evidence or argument as the Court may allow at the hearing of this matter.

DATED: July 23, 2014                    SIMMONDS & NARITA LLP
                                        MICHAEL R. SIMMONDS
                                        LIANA MAYILYAN


                                        By:   /s/Liana Mayilyan
                                              Liana Mayilyan
                                              Attorney for Defendant
                                              Citibank N.A.

# TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.     Allegations of the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.     The New York Action.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.     The Florida Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.     Legal Standard Governing Motions To Dismiss. . . . . . . . . . . . . . . . 6

     B.     The First Cause of Action Fails To State A Valid Claim For Breach Of Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.     Muho's Second Cause of Action Fails To State A Claim For Conversion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.     Muho's Third Cause of Action For Trespass To Chattels Fails As A Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     E.     Muho's Fourth Cause of Action Fails To State A Valid Claim For Interference With Economic Relations. . . . . . . . . . . . . . . . . . . . 11

     F.     Muho Fails To State A Valid Claim For Intentional Infliction Of Emotional Distress.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4

*Ashcroft v. Iqbal*
556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

5

6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*
402 U.S. 313 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8

9

*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

11

*Chevron Corp. v. Donzinger*
871 F. Supp. 2d 229 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12

13

*Conley v. Gibson*
355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

*Galbraith v. County of Santa Clara*
307 F.3d 1119 (9th Cir. 2002)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15

16

*Johnson v. Riverside Healthcare Sys., L.P.*
534 F.3d 1116 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17

*Leveraged Hawk, Inc. v. Global Hawk, Ltd., et al.*
U.S.D.C., N.D. Cal., Case No. 3:13-cv-03469-MMC). . . . . . . . . . . . . . . . . . . 12

18

19

*Miron v. Herbalife Intern.. Inc.*
11 Fed. Appx. 927 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20

*Muho v. Alphonse Fletcher Jr., et al.*
U.S.D.C., Southern District of Florida, Case No. 1:14-cv-20568-KMM. . . . . . . . . . . 5

21

22

*Skilstaf, Inc. v. CVS Caremark Corp.*
669 F.3d 1005 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23

*Soundview Elite Ltd., et al. v. Gerti Muho, et al.*
U.S.D.C., Southern District of New York, Case No. 1:13-cv-06895-AT. . . . . . . . . . 4

24

25

*Von Saher v. Norton Simon Museum of Art at Pasadena*
592 F.3d 954 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26

*Young v. Facebook, Inc.*
790 F. Supp. 2d 1110 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27

28

*Yount v. Acuff Rose-Oprvland*
103 F.3d 830 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATE CASES**

*Berkley v. Dowds*
152 Cal. App. 4th 518 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bernhard v. Bank of America Nat. Trust & Savings Assn.*
19 Cal. 2d 807 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Della Penna v. Toyota Motors Sales, U.S.A., Inc.*
11 Cal. 4th 376 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Durell v. Sharp Healthcare*
183 Cal. App. 4th 1350 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Farmers Ins. Exch. v. Zerin*
53 Cal. App. 4th 445 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*First Comm. Mort. Co. v. Reece*
89 Cal. App. 4th 731 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fletcher v. Western Nat'l Life Ins. Co.*
10 Cal. App. 3d 376 (1970).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Intel Corp. v. Hamidi*
30 Cal. 4th 1342 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Oakdale Vill. Group v. Fong*
43 Cal. App. 4th 539 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Youst v. Longo*
43 Cal. 3d 64 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


**FEDERAL STATUTES**

Federal Rules of Civil Procedure
     Rule 12(b)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 8


**OTHER AUTHORITIES**

4 Witkin, *Cal. Procedure* (5th ed. 2008)
     Pleading, § 518, at 650. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4 Witkin, *Cal. Procedure* (5th ed. 2008)
     Pleading, § 530, at 659. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.      <u>INTRODUCTION</u>

Plaintiff Gerti Muho ("Muho") stole $2,067,377.24 from an entity called Soundview Elite Ltd. ("Soundview") by transferring that sum from an account in Monaco to accounts in his name or control at Defendant Citibank N.A. ("Citibank"). Muho was sued by Soundview in the United States District Court for the Southern District of New York for conversion.  That court ordered a freeze on the funds at Citibank, and judgment was subsequently entered against Muho in that case for the full amount converted.  First upon suspicion of illegal activity, and then in compliance with restraining and attachment orders of the court in New York, Citibank refused to permit withdrawals or transfers from the accounts.

Muho has now sued Citibank, seeking compensatory damages of over $50,000,000 and punitive damages of $250,000,000.  His complaint, originally filed in Alameda County Superior Court and removed to this Court, purports to allege five causes of action: breach of contract, conversion, trespass to chattels, intentional interference with economic relations, and intentional infliction of emotional distress. None states a valid claim for relief.  This frivolous complaint should be dismissed without leave to amend.

Muho cannot state a valid claim for breach of contract.  He has failed to specify any provision of agreement governing the account that Citibank allegedly breached. Nor has he plead facts sufficient to show his performance under the contract.  As a matter of law, it is now res judicata that Muho stole the funds in question.  Muho cannot allege that Citibank breached the account agreement with Muho by refusing to permit withdrawals from the account, where the express terms of the agreement authorize Citibank to refuse a withdrawal request when Citibank suspects illegality or when Citibank is ordered by a court not to permit the withdrawals.  Muho cannot, consistent with Rule 11, amend his complaint to state a valid claim for breach of contract.

Muho's Second and Third Causes of Action, for conversion and trespass to chattels, must also be dismissed without leave to amend.  These claims are barred by res judicata.  It has already been adjudicated in the Southern District of New York that the funds in question were stolen by Muho and do not belong to him.  Muho cannot allege ownership of the funds in this action.  In addition, money is not a "chattel," as a matter of law.  There is nothing Muho can allege to cure these defects.

Muho's Fourth Cause of Action, for intentional interference with economic relations, also fails.  He has not alleged any of the required elements of a claim for intentional interference with prospective contractual or economic relations, and he cannot allege any "wrongful" action or conduct by Citibank, or that he suffered any economic harm.

Lastly, Muho's Fifth Cause of Action, for intentional infliction of emotional distress, fails to plead any extreme or outrageous conduct by Citibank, and Muho fails to allege that he suffered severe emotional distress.  Nor can Muho allege such facts, consistent with Rule 11, where he has already been adjudicated to have stolen the funds that he now contends Citibank should have permitted him to withdraw.

Muho is a vexatious litigant.  Related lawsuits have previously been dismissed *sua sponte* by the Northern District of California and the Southern District of Florida. The Complaint in this case should be dismissed pursuant to Rule 12(b)(6) without leave to amend.

## II.    STATEMENT OF FACTS

### A.    Allegations of the Complaint

Muho alleges that he is an "investment manager to a group of investment funds with about $300 million in private assets."  *Id.* ¶ 5.  Muho claims that under his management of the investments funds, he learned that the former investment managers had taken "assets of [his] investment funds."  *See id.* ¶¶ 6-8.  Muho alleges that he sued these two entities in the Northern District of California "for damages exceeding

1    $200 million in value" (*id.* at ¶ 10), but further alleges that Citibank "thwarted" these

2    efforts by denying him access to his own deposits, stealing Muho's funds, sending

3    Muho "chasing ways to close his account," humiliating his person and his trade, and

4    "left Plaintiff stranded and in physical danger."  *See id.* ¶ 11.

5        In 2009, Muho opened a deposit account (the "Account") with Citibank in

6    Berkeley, California.  *See id.* ¶ 12.  On or about August 19, 2013, however, Muho

7    claims that he was "forced" to stop using the Account after "Citibank violated its

8    agreement with Plaintiff and stole Plaintiff's funds" by refusing to allow him access to

9    the Account when he tried to withdraw $500.  *See id.* ¶¶ 13-14.

10       Muho further alleges that he was directed to discuss the Account only with a

11   Ms. Ivona Sinovic, allegedly a Citibank employee in New York City.  *See id.* ¶¶ 15-

12   18.  When he spoke with Ms. Sinovic, she allegedly told him that "the 'back office'

13   had blocked Plaintiff's accounts and that she 'had no idea what the issue was,'" but

14   that she would have someone contact him, which did not happen.  *See id.* ¶¶ 22-23.

15   He also claims that he visited "over a dozen different Citibank branches," but again

16   was unable to access or close the Account.  *See id.* ¶ 34.  He also alleges that Citibank

17   never responded to his "request for written confirmation of any accounts tied to

18   Plaintiff at Citibank facing any restrictions."  *See id.* ¶ 31.

19       Based on these allegations, Muho has sued Citibank for: (1) breach of contract;

20   (2) conversion; (3) trespass to chattels; (4) interference with economic relations; and,

21   (5) intentional infliction of emotional distress.  *Id.* ¶¶ 36-78.  Specifically, Muho

22   alleges that Citibank breached the agreement governing the Account "when it withheld

23   from Plaintiff his own money, failed to keep his money safe for him," refused to close

24   and inform Plaintiff about the Account and failed to act in good faith.  *Id.* ¶ 41.  He

25   also alleges Citibank interfered with his "ownership" of the funds by conversion

26   "when it withheld them without reason" (*id.* ¶ 48), and committed trespass to chattels

27   by denying his request to have his funds returned to him.  *Id.* ¶ 58.

28

Attempting to allege a cause of action for "interference with economic relations," Muho alleges that he informed Citibank "that he required access to the money Plaintiff had deposited with Citibank in order to pay court fees in connection with Plaintiff's suit [in the Northern District of California] against FAM and Citco, which would likely result in an economic benefit to Plaintiff and Plaintiff's Investors due to the overwhelming evidence Plaintiff had amassed against FAM and Citco. Citibank thus knew of the economic relationship between Plaintiff and his Investors and FAM and Citco." *Id.* ¶ 65. But Citibank still refused Plaintiff all access to his accounts (*id.* ¶ 66), and as "a result of Citibank's action, Plaintiff lost his expected benefit to himself and his Investors." *Id.* ¶ 67.

Muho's claim for intentional infliction of emotional distress is replete with conclusory allegations, culminating in the allegation that Citibank "knew Plaintiff would be harmed, and would be vulnerable to and would suffer emotional distress because any reasonable person would in the circumstances," and that any reasonable person would "so suffer when his trusted bank suddenly decided to steal from him with no explanation." *Id.* ¶ 77.

It is difficult to quantify the damages sought by Muho, since some of his alleged damages may be duplicative. But collectively, Muho demands compensatory and punitive damages in the amount of $968,120,000. *Id.* ¶¶ 44, 52-53, 60-61, 71-72, 79-80.

## B.   The New York Action

In connection with this motion to dismiss, Citibank requests that the Court take judicial notice of filings in *Soundview Elite Ltd., et al. v. Gerti Muho, et al.*, United States District Court, Southern District of New York, Case No. 1:13-cv-06895-AT, filed September 27, 2013 ("the New York Action").[1]   The New York Action was

---

[1]A matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F.3d 1005, 1016, n.9 (9th Cir. 2012). The

brought against Muho to recover funds he stole from Soundview.  Specifically, the complaint alleged that on or about August 8, 2013, Muho "fraudulently induced" HSBC Private Bank in Monaco to transfer $2,067,377.24 from Soundview's HSBC account to a Citibank account.  *See* Request for Judicial Notice in Support of Motion to Dismiss ("RFJN"), Ex.  A, ¶¶ 26-34.  The plaintiffs in the New York Action brought causes of action against Muho and an entity he controls (Leveraged Hawk) for conversion and unjust enrichment.  They alleged that they owned the money in the HSBC account, and that Muho's took actions "essentially amounting to theft" to effect "an unauthorized and unlawful transfer" of those funds to himself.  They sought full restitution and other damages.  *Id.* ¶¶ 36-41.

On April 4, 2014, the court in the New York Action entered a default judgment against Muho totaling $2,194,185.89.  *See* RFJN, Ex. B.

In the New York Action, the court entered a temporary restraining order on October 16, 2013, enjoining Citibank from withdrawing, transferring or otherwise disposing of the funds alleged to have been converted by Muho.  *Id.* Ex. C.  The court also entered, on October 25, 2013, an order of attachment, ordering the Sheriff of New York City to levy upon any funds, property, investments and assets of Muho, "including any bank accounts where either Defendant [Muho or Leveraged Hawk] or both Defendants have an ownership interest, including any accounts at Citibank, N.A., for the purpose of securing and satisfying" the sum of $2,067,337.24.  *Id.* Ex. D.

## C.    The Florida Action

This is not the first action by Muho against Citibank.  He filed *Gerti Muho v. Alphonse Fletcher Jr., et al.*, United States District Court, Southern District of Florida, Case No. 1:14-cv-20568-KMM, on February 14, 2014 ("the Florida Action") against 46 defendants, including Citibank and Ivona Sinovic.  *See* RFJN, Ex. F.  In the Florida

---

court need not accept as true allegations that contradict facts which may be judicially noticed by the court. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

1   Action, Muho expressly alleged (admitted) that he instructed HSBC Private Bank

2   (Monaco) to transfer "about $2 million" to his Leveraged Hawk account at Citibank.

3   *Id.* ¶ 192.

4        The Florida Action was dismissed *sua sponte* by the court in a minute order

5   stating: "This claim is frivolous.  The Eleventh Circuit has recognized the inherent

6   power of courts to dismiss frivolous suits without giving notice to the parties, and has

7   noted that this broad, inherent power, not based on statute, applies to actions that are a

8   sham; frivolous; harassing and vexatious; vexatious; . . . [or] brought in bad faith. . . .

9   Plaintiff's claim is incoherent and incomprehensible.  Thus, this claim is DISMISSED

10  WITHOUT PREJUDICE."  *See* RFJN, Ex. G at pp. 4-5.

11

12  **III.   ARGUMENT**

13       **A.    Legal Standard Governing Motions To Dismiss**

14       Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must

15  be dismissed if it fails "to state a claim upon which relief can be granted."  Fed. R.

16  Civ. P. 12(b)(6).  To "state a claim" for relief, a complaint must set forth a "short and

17  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

18  P. 8.  The decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*")

19  and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*") include the analytical framework

20  that courts must use when evaluating motions to dismiss.

21       In *Twombly*, the Supreme Court expressly rejected the "no set of facts" test that

22  had been articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See Twombly*,

23  550 U.S. at 562-63.  The Court held that although "detailed factual allegations" are not

24  required at the pleading stage, "labels and conclusions, and a formulaic recitation of

25  the elements of a cause of action will not do."  *Id.* at 555.  There must be sufficient

26  facts pled to state a claim to relief that is "plausible on its face."  *Id*. at 570.  In *Iqbal*,

27  the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual

28  content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Thus, the first step when evaluating a motion to dismiss is to identify the legal conclusions, because they "are not entitled to the assumption of truth." *Id*. at 679. Next, with respect to any "well-pleaded factual allegations" in the complaint "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The determination of whether a plausible claim for relief has been stated is "a context-specific task" that requires a court to "draw on its judicial experience and common sense." *Id.*

Dismissal is proper under Rule 12(b)(6) where a court finds either: 1) the lack of a cognizable legal theory; or 2) the absence of sufficient facts alleged under a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008).

## B. The First Cause Of Action Fails To State A Valid Claim For Breach Of Contract

The elements of breach of contract are: (1) the existence of a contract; (2) performance by Plaintiff; (3) breach by the defendant; and (4) damage resulting from the breach. *See First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). When, as here, "a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible." *See Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996). Further, a plaintiff must allege the **specific provisions** in a written contract creating the obligation defendant is said to have breached. *See Young v. Facebook, Inc.,* 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (citing *Miron v. Herbalife Intern., Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001)). Muho alleges that Citibank "breached its agreement with Plaintiff when it withheld from Plaintiff his own money, failed to keep his money safe for him, refused to give his money back to Plaintiff, refused to let Plaintiff close his account, refusing to

1    inform Plaintiff about his account, and when it failed to act in good faith." *See*

2    Complaint ¶ 41.  Muho fails to identify any specific provision of the agreement that

3    Citibank allegedly breached.  *See id.* ¶¶ 36-46.

4        A plaintiff may either quote the relevant contractual language verbatim or attach

5    a copy of the contract itself.  4 Witkin, *Cal. Procedure* (5th ed. 2008), Pleading, § 518,

6    at 650-51.  Muho did neither.  Instead, he vaguely asserts that Citibank breached its

7    agreement "to hold Plaintiff's money, keep it safe for him, and make it available to

8    him around the clock . . . to let Plaintiff close his account at any time for any reason

9    whatsoever," yet Muho fails to identify any contractual provisions that support these

10   vague allegations.  *See id.* ¶¶ 37-38.

11       Where the plaintiff fails to attach a document referred to in the complaint, the

12   defendant may provide the document in support of a Rule 12(b)(6) motion to show

13   that it does not support the plaintiff's claim.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th

14   Cir. 1994), *overruled on other ground in Galbraith v. County of Santa Clara*, 307 F.3d

15   1119 (9th Cir. 2002).  Citibank submits in support of this motion the Declaration of

16   Dean Keenan, the Branch Manager of its Berkeley branch, who attaches Muho's

17   signature card and the contract governing Muho's account.  The agreement expressly

18   provides that Citibank may refuse a request for a withdrawal from an account where,

19   among other reasons, the Bank has "some suspicion of fraud, irregularity, or

20   illegality," and where the Bank has "been ordered by a court or other legal process not

21   to permit the withdrawal."  *See* Keenan Declaration, Ex. B, at p. 33.

22       Muho cannot legitimately contend that Citibank breached the agreement

23   governing his account where Citibank was restrained by the court in the New York

24   Action from allowing Muho to withdraw or transfer funds.  Citibank was not free to

25   disregard the order of the court in the New York Action, and the account agreement

26   expressly allowed Citibank to refuse such a request under such circumstances.  Indeed,

27   when Muho sought to vacate the restraining order in the New York Action, the court

28   denied the motion on February 28, 2014, as "frivolous."  *See* RFJN, Ex. E.  And even

1    before entry of the restraining order, it would not have been a breach of the account

2    agreement to refuse to permit a withdrawal where Citibank suspected fraud,

3    irregularity or illegality.  The judgment of the court in the New York Action, awarding

4    Soundview a return of the money Muho wrongly transferred to the Citibank account,

5    conclusively establishes illegality.  RFJN, Ex. B.

6         Besides the failure to allege adequately a breach of the account agreement, the

7    Complaint is devoid of any allegation regarding Muho's own performance under the

8    agreement.  This is an essential element of any claim for breach of contract.  4 Witkin,

9    *Cal. Procedure* (5th ed. 2008), Pleading, § 530, at 659.  " '[I]t is elementary that one

10   party to a contract cannot compel another to perform while he himself is in default.' "

11   *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  It would be futile

12   to grant Muho leave to allege that he performed all that was required of him under the

13   contract.  As a matter of res judicata, it is already established that he was using this

14   account for fraudulent or illegal purposes in connection with the theft giving rise to

15   the judgment against him in the New York Action.  Muho cannot allege, consistent

16   with Rule 11, that he deposited funds in the Account that were not stolen; that were

17   not subject to the restraining order entered in the New York Action (RFJN, Ex. C) by

18   October 16, 2013; that were not subject to the attachment order entered in the New

19   York Action (*id.*, Ex. D) by October 25, 2013; and that were available for withdrawal.

20        Muho's claim for breach of contract must be dismissed, and it would be futile to

21   grant leave to amend.

22   **C.     Muho's Second Cause Of Action Fails To State A Claim For Conversion**

23

24        Muho cannot satisfy any of the required elements of his Second Cause of Action

25   for conversion.  "Conversion is the wrongful exercise of dominion over the property

26   of another."  *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996).  The

27   elements of a conversion claim are (1) the plaintiff's ownership or right to possession

28

of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property right; and (3) damages. *Id.* at 543-44.

Muho claims that "Citibank interfered with his ownership of his funds when it withheld them without reason, cause, or right."  Complaint ¶ 48.[2]  Muho's conversion claim fails because Muho's allegation of "ownership" directly contradicts the judgment in the New York Action, where it has been finally adjudicated that the money belonged to Soundview, not Muho, and was converted by Muho when he, without authority, caused it to be transferred from Soundview's HSBC Private Bank Monaco account to the account at Citibank.  Accordingly, his claim for conversion is barred by the doctrine of *res judicata*, based on the judgment in the New York Action. *See* RFJN, Exs. A, B.[3]

As a matter of law, this Court need not accept as true Muho's allegation that he owned the money in his Citibank account.  It has already been decided against him in the New York Action that he did **not** own that money.  Muho's conversion claim fails to allege this first element, and there is nothing that Muho could allege, consistent with Rule 11, that would cure this defect.

Muho also cannot allege a "wrongful act" by Citibank.  The Bank was acting within the terms of its agreement with Muho, and in compliance with the restraining

---

[2]As a technical matter, although money can be the subject of a conversion action, it must be "a specific sum capable of identification." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997).  Here, Muho fails to identify any specific sum that Citibank purportedly converted.

[3]To determine whether Citibank can assert *res judicata* in the present action, the Court must decide:  (1) was the issue, claim, or cause of action decided in prior adjudication identical with the one presented in the action in question; (2) was there a final adjudication on the merits; and (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication.  *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 323-24 (1971) (citing *Bernhard v. Bank of America Nat. Trust & Savings Assn.*, 19 Cal. 2d 807, 813 (1942)).  All the requirements for *res judicata* are present here.

1    and attachment orders entered in the New York Action, when it refused to permit

2    Muho to withdraw the funds (and/or close the Account after withdrawing the funds).

3         Muho also cannot allege "damage" where he did not own the property – the

4    money – but, rather, had stolen it.

5         **D.    Muho's Third Cause Of Action For Trespass To Chattels Fails As A**
         **Matter of Law**

6

7         Muho's Third Cause of Action, for trespass to chattels, also fails.  First and

8    foremost, money is not a "chattel."  There is no chattel at issue in this case.  *See, e.g.,*

9    *Chevron Corp. v. Donzinger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) ("'Chattel' is

10   defined as '[m]ovable or transferable property [such as] personal property.'  Money is

11   fungible and not properly characterized as a 'chattel.'").

12        This cause of action also suffers from the same defect as Muho's conversion

13   claim.  A trespass to chattels claim "lies where an intentional interference with the

14   possession of personal property has proximately caused injury."  *Intel Corp. v.*

15   *Hamidi,* 30 Cal. 4th 1342, 1350-51 (2003).  Muho cannot show that the funds in the

16   Account were his property at the time of the alleged trespass.  To the contrary, it has

17   already been adjudicted that he stole those funds and they were *not* his property.  He is

18   barred by the doctrine of *res judicata* from contending otherwise in this action.

19        **E.    Muho's Fourth Cause Of Action Fails To State A Valid Claim For**
         **Interference With Economic Relations**

20

21        To state a valid claim for intentional interference with prospective economic

22   relations,[4] Muho must allege: (1) an economic relationship between the himself and a

23   third party containing the probability of future economic benefit; (2) defendant's

24   knowledge of the relationship; (3) intentional acts by defendant designed to disrupt the

   _____

25        [4] Although Muho's fourth cause of action is for "interference with *economic*
     relations," California courts have held that the phrase "interference with economic
26   relations" refers to the tort generally known as "intentional interference with prospective
     contractual or economic relations" to distinguish it from the cognate form, "intentional
27   interference with contract."  *See Della Penna v. Toyota Motors Sales, U.S.A., Inc.*, 11
     Cal. 4th 376, 381 (1995).

28

1  relationship; (4) actual disruption of the relationship; and (5) economic harm

2  proximately caused by the acts of defendant.  *See Youst v. Longo*, 43 Cal. 3d 64

3  (1987).  Muho does not allege facts to support a single element of this claim.

4       Moreover, any attempt to amend this claim would be futile.  Muho claims that

5  Citibank committed this tort by allegedly denying him access to the Account, which he

6  allegedly needed to pay court fees in connection with a lawsuit "he" had filed in the

7  Northern District of California.  *See* Complaint, ¶¶ 9-10, 65.  He claims that Citibank's

8  actions caused him to lose an unidentified "expected benefit to himself and his

9  Investors."  *See id.* ¶ 67.  Once again, however, Muho is attempting to allege facts that

10  contradict facts as to which this Court may take judicial notice, and this Court need

11  not accept Muho's allegations as true.

12       Citibank requests that the Court take judicial notice of the docket in the

13  Northern District of California action to which this allegation refers, *Leveraged Hawk,*

14  *Inc. v. Global Hawk, Ltd., et al.*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-03469-MMC

15  ("the Northern District of California Action").  *See* RFJN, Ex. H.  There, Muho sued

16  35 defendants on July 25, 2013.  Magistrate Judge Westmore initially denied leave to

17  proceed *in forma pauperis*, but on September 6, 2013, the filing fee of $400 *was paid*.

18  *Id.* at p. 4.  Almost two months later, Magistrate Judge Westmore recommended that

19  the action be dismissed for failure to prosecute.  *See* RFJN, Ex. I.  The case was

20  reassigned to Judge Chesney for all purposes on October 28, 2013, and the docket also

21  reflects multiple mailings from the clerk that were returned undeliverable.  *Id.* Ex. H at

22  pp. 4-5.  Judge Chesney dismissed the case on November 26, 2013 for the reason

23  expressed by Magistrate Judge Westmore (failure to prosecute), and for the additional

24  reason that the plaintiff failed to indicate a current address as required by Local Rule

25  3-11(b).  *Id.* Ex. J.

26       Thus, the dismissal of the Northern District of California Action was not caused

27  by Muho's alleged inability to pay "court costs" resulting from the freezing of his

28  Citibank account.  It was caused by the failure of the plaintiff in that case, Leveraged

1   Hawk, to prosecute the case and comply with the rules of this Court.  The dismissal

2   occurred months after the filing fees were, in fact, paid.  There was no "economic

3   harm" to Leveraged Hawk that was caused by Citibank's alleged actions, and Muho

4   does not even attempt to articulate how he, personally, has standing in this case to

5   seek damages allegedly suffered by Leveraged Hawk from the dismissal of the

6   Northern District of California Action.[5]

7         Muho also cannot, consistent with Rule 11, plead that Citibank engaged in any

8   acts that were in and of themselves unlawful.  The requirement that the plaintiff plead

9   and prove that the defendant's interference was "wrongful" was specifically adopted

10  by the California Supreme Court in *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th

11  376, 393 (1995).  The Court held that the interference must be wrongful "by some

12  measure beyond the fact of the interference itself."  *See id.*  Subsequently, in *Korea*

13  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003), the California

14  Supreme Court held that an act is independently wrongful if it is unlawful, which

15  means that it must be conduct proscribed by some constitutional, statutory, regulatory,

16  common law, or other determinable legal standard.  *See id.*

17        Here, it was Muho who acted unlawfully in stealing over $2 million from

18  Soundview, as has already been established in the New York Action.  Nothing done by

19  Citibank was "wrongful."  To the contrary, as already discussed above, Citibank was

20  authorized under the agreement governing the Account to refuse a withdrawal on

21  suspicion of illegal activity (ultimately validated by the judgment in the New

22  York Action), and Citibank also acted in compliance with the restraining and

23  attachment orders issued by the court in the New York Action in refusing to permit

24  Muho to withdraw funds from the Account after those orders were entered.

25  _____

26  [5]Muho also alleges that Citibank disrupted the economic relationship Muho had
    with certain creditors, such as American Express, BMW Finance, and Paypal, because
27  Citibank "reversed recent payments Plaintiff had made" to these parties. *See* Complaint,
    ¶¶ 31, 68-69.  But Muho also fails to allege any connection between this allegation and
28  his intentional interference with prospective economic relations theory.

1

### F.     Muho Fails To State A Valid Claim For Intentional Infliction Of Emotional Distress

Muho's Fifth Cause of Action purports to allege intentional infliction of emotional distress.  It, too, fails as a matter of law.  To establish a claim for intentional infliction of emotional distress, Muho must show that: (1) Citibank engaged in extreme or outrageous conduct with intent to cause, or reckless disregard of the probability of causing, emotional distress; (2) that Muho suffered severe or extreme emotional distress; and (3) Muho's injuries were actually and proximately caused by Citibank's conduct.  *See Berkley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007).

Muho alleges that "Citibank's conduct in refusing to give Plaintiff the money he had on deposit, or to explain its actions was outrageous conduct."  *See* Complaint, ¶76. This conclusory allegation does not suffice.  There are no facts alleged that would support a claim of "extreme and outrageous conduct that exceed all bounds of human decency."  *See Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 396 (1970) (conduct is "extreme or outrageous" only if it exceeds all bounds of human decency).  Indeed, Citibank was authorized to deny access to the Account if the Bank suspected illegal activity or was restrained by a court order from permitting a withdrawal.  There is nothing "extreme or outrageous" about complying with the terms of a contract or a court order.

Muho also fails to allege that he suffered *severe* emotional distress.  *See Fletcher*, 10 Cal. App. 3d at 396 (emotional distress is severe only if it is "of substantial quantity or enduring qualify that no reasonable man in a civilized society should be expected to endure it.").  Muho only alleges that Citibank's actions "would cause emotional distress," and he makes a vague reference to his self-inflicted "impossible, exhausting, and fruitless journey."  *See* Complaint, ¶¶ 76-77.

It would, again, be futile to grant leave to amend the cause of action for intentional infliction of emotional distress.  Given the judgment in the New York

1  Action, Muho simply cannot allege any facts that would support an allegation of

2  "extreme and outrageous" conduct by Citibank.

3  **IV.    <u>CONCLUSION</u>**

4      This action is just the most recent in a series of frivolous legal actions

5  attempted by Muho in California, New York and Florida.  For the reasons stated

6  herein, the Court should dismiss this case without leave to amend.

7

8                                     Respectfully submitted,

9  DATED: July 23, 2014               SIMMONDS & NARITA LLP

10

11                           By:   s/Liana Mayilyan
                                   Liana Mayilyan
12                                 Attorney for Defendant
                                   Citibank N.A.

## PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to this action.  My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On this date, I served copies of the following documents:

1)   **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

2)   **[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

by causing such documents to be placed in a sealed envelope for collection and delivery by the United States Postal Service to the addressee indicated below:

**VIA U.S. MAIL**

Gerti Muho
1300 Clay Street
Oakland, CA 94612

*Plaintiff, In Pro Per*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Francisco, California on this 23rd day of July, 2014.

_____
Coral J. Cogbill