GERTI MUHO
1100 BISCAYNE BLVD 5303
MIAMI, FL 33132
(212) 300-3826
GM@GMCAPITAL.NET

PLAINTIFF, PRO SE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERTI MUHO,<br><br>    Plaintiff,<br><br>vs.<br><br>CITIBANK N.A.,<br><br>    Defendant. | Case No. 4:14-cv-03219-YGR<br><br>**CASE MANAGEMENT STATEMENT OF PLAINTIFF GERTI MUHO**<br><br>Date: November 3, 2014<br>Time: 2:00<br>Ctrm: 1, 4th FL, Oakland<br>Judge: Hon. Yvonne Gonzalez Rogers |

Plaintiff Gerti Muho ("Plaintiff" or "Muho") submits this CASE MANAGEMENT STATEMENT pursuant to this Court's Standing Order, the Standing Order for All Judges of the Northern District of California dated August 25, 2014, and Civil Local Rule 16-9.

    1.   *Jurisdiction and Service*. Plaintiff sued Citibank June 16, 2014 in Alameda County Superior Court on state law and common law causes of action. Plaintiff served Citibank N.A. ("Citibank") the following day at the Citibank branch in Berkeley, California where Plaintiff had opened his Citibank account. Citibank filed a new case by notice of removal with this Court July 16, 2014, and on the same day filed with the Alameda County Superior Court a notice of removal of the case to this Court. Citibank removed the case to this Court on diversity grounds, relying on the Supreme Court's recent ruling that the location that would determine the location of a NA for citizenship purposes under 28 USC 1348 was the location of the NA's headquarters. Citibank's headquarters are located in the State of South Dakota,

which made Citibank a citizen of South Dakota for diversity purpose. Plaintiff did not challenge the removal even though Plaintiff's reasons for not naming additional parties that would have ruined diversity were financial and caused by Citibank. Plaintiff made a conscious effort however to avoid removal of the case from State court, and Plaintiff likely left off his complaint causes of action Plaintiff likely has against Citibank under federal law.

Citibank served the notice of removal on Plaintiff via Fedex. Venue is proper.

2.   *Facts*. In April 2013, Plaintiff removed Alphonse Fletcher, Jr. ("Fletcher") from a group of foreign hedge funds Plaintiff and Fletcher co-managed since August of 2012. Plaintiff's actions were motivated by the economics and the justice that resulted with Fletcher's removal from Richcourt. Fletcher's undisclosed self-dealings made his removal just and proper. Fletcher's reluctance to pursue Richcourt's rights made his removal economical. Plaintiff did not know then that Fletcher's past undisclosed self-dealings now caused his reluctance to pursue the hedge funds rights.

At the time Plaintiff removed Fletcher, Plaintiff knew little of the hedge funds' past. Plaintiff knew Fletcher a few times had exclaimed that he could destroy Citco Group Ltd. ("Citco"). Citco is administrator, or accountant-custodian to over $1 trillion of private assets worldwide, as Citco once proudly claimed on its website but now removed. Plaintiff saw Citco as an attractive target, if largely unknown to Plaintiff at the time. Plaintiff knew Citco once co-managed with Fletcher the hedge funds Plaintiff now exclusively controls.

Plaintiff also knew at the time that Global Hawk and J.P. Morgan Chase & Co. ("**JP Morgan**") were actively avoided topics of discussion and a sources of possible claims against smaller parties. Plaintiff, in all, expected parties that held clear liability to his funds would owe the funds together between $10-$50 million, with $20 million being the likely amount. Needless to say, Plaintiff did not know then of the legal liability parties had buried over two decades in Plaintiff's hedge funds.

After removing Fletcher, Plaintiff tried to downplay the removal away entirely: saying even that Fletcher was guaranteed by the structure a permanent, if nonvoting, seat on the Leveraged Hawk Board. Fletcher never came on board, and the funds lawyers (Walkers LLP, Weill Gotshall & Manges LLP, and Ritch & Connelly LLP) all went dark, and in the case of Walkers, returned a few days later only to refuse delivery to the registry of the documents GM had sent it, without cause or reason.

Between April and August, attorneys from a dozen plus of the nation's top law firms unjustly attacked Plaintiff in an attempt to steal his rights, generally via fraud. Plaintiff met the challenge and Plaintiff (i) addressed the threats he received from law firm in kind and caused all Cohen & Gresser, Weill Gotshall & Manges, Walkers, and Ritch & Connelly to recuse themselves; (ii) registered each of his funds with the Securities & Exchange Commission ("SEC"), the Internal Revenue Service, and with each State in which they operated; (iii) contacted the government, gave it 300 gigabytes of original previously withheld, and met with agents of the government twice, each time for a full day, meeting jointly agents from the SEC, the Department of Justice ("DOJ") and from the Federal Bureau of Investigations ("FBI"); and once with the taint teams that shadowed each agency (iv) attended his first deposition and turned it to his advantage (v) filed for registration as a registered investment adviser with the SEC, which registration became effective later in the year (vi) filed his first complaint in federal Court properly alleging claims in excess of $200 million against some of the dirties litigants in the world.

The lawyers unjust attacks against him and their attempt to steal his rights, in time, became the very cause that motivated Plaintiff for the fight. Fast forward to mid-August where Plaintiff had won, or was assured he would soon win his fight. Winning against all odds in the lopsided fight Plaintiff had faced for his rights, meant Plaintiff had too achieved the original causes that had underpinned his fight. But Plaintiff's victory over the original causes paled by comparison to Plaintiff's victory against the legions of attorneys that had tried to steal Plaintiff's rights.

Plaintiff respectfully refers the Court to the facts found in Plaintiff's complaint as filed with this Court for events that occurred between mid-August and late July culminated when Plaintiff, who by mid-August of 2013 had achieved hero status, was called in Citibank's motion to dismiss, in Citibank's opening sentence of its first paragraph, a thief who had stolen two plus million by order of….

The facts that still escape this story are the facts about why what happened, happened. Why was Plaintiff told to speak with Ivona Sinovic; Or better yet, who was Ms. Sinovic and why did she use a Verizon Wireless cellular phone to speak with customers; and even why Ms. Sinovic's voice mail on her Verizon cell phone was not set up.

Was it because Citibank was afraid that Plaintiff by going after Global Hawk and Jersey (Corsair) would reach the Ottawa deal that depleted a good chunk of Global Hawk's assets that Plaintiff's funds bought? Was it because Citibank had contributed to the depletion of the assets by JP Morgan, FAM, and Citco by keeping an eye shut to their self-dealings notwithstanding duties Citibank may have had to note holders as their principal paying agent of the Ottowa offering.

Or did it have nothing to do with Ottowa, and was instead caused by dealings Citibank had with FAM when it held FAM's Citibank accounts during the 2000's. Well, notwithstanding other reasons Citibank may have had, Ottowa must have played a part into Citibank's actions for JP Morgan would have asked for it.

3. *Legal Issues*. None.

4. *Motions*. On July 23, 2014, Citibank filed a motion to dismiss all claims for relief. The parties have fully briefed the motion. The Court has vacated the hearing and indicated it will decide the motion on the papers. Plaintiff does not expect, at this time to file a motion for summary judgment in this case.

5. *Amendment of Pleadings*. Plaintiff anticipates new causes of action to arise throughout discovery. Plaintiff requests that any deadline the Court sets, if it sets any, not preclude Plaintiff from filing causes of actions arising from information learned by Plaintiff's from new evidence received by Plaintiff, and to the extent the newly learned cause of action makes actionable inequitable conduct of Citibank that would otherwise remain un-actionable. Plaintiff is particularly concerned about civil rights type causes of action.

6. *Evidence Preservation*. The parties have agreed to preservation of relevant evidence.

7. *Disclosures*. Citibank has yet to make the required disclosure under Rule 26. Plaintiff believes it causes undue and unnecessary delay for Citibank to withhold the required disclosures given in its response filed September 22, 2014, Citibank conceded Plaintiff by amendment could plead claims that alleged a cause of action (by claiming in its Motion to Dismiss that Plaintiff, even if allowed to amend, would not be able to establish a breach of contract cause of action, whereby in its response to Plaintiff's answer Citibank shifts its claim to Plaintiff should not be allowed to so amend).

8. *Discovery*: Neither side has taken discovery. .

9. *Class Actions*. This is not a class action.

10. *Related Cases*. None, after Plaintiff's antitrust action was dismissed *sua sponte* without prejudice by Judge K. Michael Moore of the Florida Southern District Court for being very badly written and slightly unreal to the extent that it is prone to disbelief.

11. *Relief*. The complaint estimates a fair value of $52,040,000 for actual damages caused by Citibank and for five times the award of actual damages in punishment as punitive damages. Plaintiff foresees the actual amount of damages to increase based on Plaintiff's learning that new claims very likely once existed against previously unknown parties.

*12.*   *Settlement and ADR.* There have been no settlement discussions. Plaintiff believes there is some prospect for settlement. Certain key discovery would be helpful toward negotiating a resolution, and could help to position the parties to negotiate a resolution. To comply with the requirements of the Local Rules, the parties have agreed to participate in court-appointed mediation. GM requests that a deadline of no more than three hours, or an otherwise minimum length of time be set, considering Citibank's present attitude toward the prospects of a settlement.

*13.*   *Consent to Magistrate Judge For All Purposes.* This case was originally assigned to Magistrate Judge Donna M. Ryu. Plaintiff's consent to the assignment was not given. Judge Yvonne Gonzalez Rogers was assigned to the case August 4, 2014.

*14.*   *Other References.* This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

*15.*   *Narrowing of Issues.* Plaintiff attempts to narrow the issues that remain unknown in this Case in the Facts discussion above.

*16.*   *Expedited Trial Schedule.* Plaintiff agrees this case is not suited for handling under Expedited Trial Procedures.

*17.*   *Scheduling.* GM proposes the following dates: initial disclosures made by both sides by November 24, 2014; initial requests for production of documents and interrogatories be served by December 15, 2014; until June 1, 2015; depositions begin June 1, 2015, with each side designating a series of witnesses for the other side that they will want to depose; with discovery of the experts and any dispositive motions being completed by September 1st; and trial scheduled shortly after.

*18.* *Trial.* Plaintiff requested a trial by jury.

19. *Disclosure of Non-party Interested Entities or Persons*. All parties having nonparties with direct, pecuniary interests in this Case have made the necessary disclosures.

20. *Professional Conduct*: GM has not yet reviewed the Guidelines for Professional Conduct for the Northern District of California, but endeavors to familiarize himself with it in the near future.

21. *Other Matters*. None at this time.

Dated: September 28, 2014

_____
GERTI MUHO
PRO SE