UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**GERTI MUHO**,

               Plaintiff,

      v.

**CITIBANK N.A.**,

               Defendant.

Case No.  14-cv-03219-YGR

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 9

*Pro se* plaintiff Gerti Muho ("Muho") filed his complaint on June 10, 2014 in California Superior Court, Alameda County, asserting causes of action for: (1) breach of contract; (2) conversion; (3) trespass to chattels; (4) interference with economic relations; and (5) intentional infliction of emotional distress.  (Dkt. No. 1, Ex. A ("Complaint").)  On July 16, 2014, defendant Citibank N.A. ("Citibank") filed a notice of removal pursuant to 28 U.S.C. § 1441(a).  (Dkt. No. 1.)  The Court has diversity jurisdiction over the dispute pursuant to 28 U.S.C. §§ 1332(a)(1) and 1348.  (*See* Dkt. No. 1.)  This lawsuit relates to Citibank's refusal to allow plaintiff to withdraw funds from his account.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Citibank moves to dismiss plaintiff's complaint on the grounds that each cause of action fails to state a claim upon which relief can be granted.  (Dkt. No. 9 ("Mot.").)  Muho opposes the motion.  (Dkt. No. 24 ("Oppo.").)

Having carefully considered the papers submitted and the complaint, and for the reasons stated herein, the Court hereby **GRANTS** Citibank's Motion to Dismiss **WITH LEAVE TO AMEND**.

## I.   BACKGROUND

The complaint is not a model of clarity.  Nevertheless, the Court reads the complaint's allegations as generally relating to Citibank's decision to deny plaintiff access to the funds in his

United States District Court
Northern District of California

deposit account starting in August 2013.

Citibank claims it did so first as a result of suspected fraud or illegal activity[1] and later pursuant to court orders in a case that resulted in a $2 million default judgment entered against Muho in the Southern District of New York.  (Mot. at 1.)[2]  The complaint in the New York action described Muho as "a disgruntled former business associate and director" who "illegal[ly] transfer[red] . . . over $2,000,000 from the Funds' bank account for his own benefit."  (RJN, Ex. A at 1.)[3]

By contrast, the complaint alleges Citibank "denied Plaintiff access to his own deposits, left Plaintiff moneyless, stole Plaintiff's funds, sent Plaintiff chasing ways to close his account, humiliated Plaintiff's person and his trade, repeatedly, . . . left Plaintiff stranded and in physical danger[,] . . . breached its agreement with Plaintiff, robbed Plaintiff's possessions, including his opportunities, and ended Plaintiff's pursuit of the dirtiest players in finance: Citco, FAM, and JP Morgan, and ended or seriously bruised Plaintiff [*sic*] stellar career and trade."  (Complaint ¶ 11.)[4]

---

[1] This argument was presented in defendant's briefing but not supported by any sworn declaration or other direct evidence.

[2] Pursuant to defendant's request for judicial notice (Dkt. No. 10 ("RJN")), and noting the non-opposition thereto, the Court takes judicial notice of the submitted documents, but not necessarily the truth of the matters asserted therein.  *See* Federal Rule of Evidence 201(b)(2); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (granting requests for judicial notice of filings in other litigation).  Each document is either a docket sheet, court order, or other filing from one of the following actions: (i) Southern District of New York action *Soundview Elite Ltd., et al. v. Gerti Muho, et al.*, Case No. 1:13-cv-06895 (RJN, Exs. A-E); (ii) Southern District of Florida action *Gerti Muho v. Alphonse Fletcher Jr., et al.*, Case No. 1:14-cv-20568 (RJN, Exs. F-G); and (iii) Northern District of California action *Leveraged Hawk, Inc. v. Global Hawk, Ltd. et al.*, Case No. 13-cv-3469 (RJN, Exs. H-J).

[3] Defendant argued these documents establish Muho stole the money in question and therefore bar the present suit under the doctrine of res judicata.  The Court notes that collateral estoppel, and not res judicata, is more applicable to the present circumstances, where defendant seeks to have the Court adopt the determination of a factual issue (in this case, the underlying allegation that Muho misappropriated certain funds) decided in a different case.  However, given the lack of briefing on this issue—including as to the relevant doctrine's applicability in the context of a default judgment—as well as the absence of specific tracing of the funds purportedly stolen by Muho and the deposits he made with Citibank, the Court declines to apply either doctrine at this time.

[4] The specific factual allegations in the complaint—but not its legal conclusions—are generally taken as true for purposes of ruling on a Rule 12(b)(6) motion to dismiss, but need not be credited to the extent they are contradicted by judicially noticed facts.  *See Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987).

United States District Court
Northern District of California

1    By way of background, Muho opened a deposit account with Citibank in 2009 at its

2 Berkeley, California branch.  (*Id*. ¶ 12.)  Plaintiff used his Citibank account without incident until

3 August 2013, when the bank terminated plaintiff's access.  (*Id*. ¶¶ 11-12.)

4    Muho, who previously attended law school at Boalt, is registered as an investment advisor

5 with the Securities and Exchange Commission.  (Complaint ¶¶ 5, 12.)  In August 2012, he began

6 managing a group of unidentified investment funds with about $300 million in private assets under

7 management.  (*Id*. ¶¶ 5-6.)  A few months later, he learned that the funds' former managers,

8 Fletcher Asset Management, Inc. ("FAM") and Citco Group, Ltd. ("Citco") "may have taken

9 hundreds of millions of dollars in assets from Plaintiff's investment funds."  (*Id*. ¶ 6.)  Muho

10 instituted an internal review that "delivered overwhelming evidence of the wrongful taking by

11 FAM and Citco of millions of assets [*sic*] from" the funds.  (*Id*. ¶ 8.)  In July 2013, he filed a

12 lawsuit against FAM and Citco in this District seeking $200 million in damages.  (*Id*. ¶ 9.)[5]

13    Around August 19, 2013, Citibank refused for the first time to allow plaintiff to access his

14 account, which held approximately $40,000.  (*Id*. ¶¶ 13-14.)  Citibank's customer service

15 department informed plaintiff the bank would continue blocking his account until he contacted a

16 purported bank employee, Ivona Sinovic.  (*Id*. ¶¶ 15-16.)  He eventually reached her at the number

17 provided.  (*Id*. ¶ 22.)  She told him that she did not know the specific issue with his account and

18 that she would have the "back office" contact him.  (*Id*.)  Muho never heard from the "back office"

19 and his future calls to Sinovic went unanswered.  (*Id*. ¶ 23.)  He subsequently visited a Miami

20 branch where he was initially told he could close his account and withdraw his funds.  (*Id*. ¶ 24.)

21 Before he was permitted to do so, however, he was informed that "very important people, very

22 high up at Citibank" had placed a hold on his account.  (*Id*. ¶¶ 25-26.)

23    On September 3, 2013, plaintiff emailed Citibank, obliquely addressing his lawsuit against

24 FAM and Citco, "rumors" started by FAM and Citco that plaintiff had stolen from his investment

25 funds, and his need to access the funds in his account in order to a pay a court filing fee.  (*Id*. ¶¶

26

27    [5] Although not otherwise specified in the complaint, that lawsuit was apparently *Leveraged Hawk, Inc. v. Global Hawk, Ltd. et al.*, Case No. 13-cv-3469, which was dismissed without prejudice on November 26, 2013.  (RJN, Exs. I-J.)

28

27-29.)  Plaintiff visited his home branch in Berkeley the next day and was thrown out.  (*Id*. ¶ 30.)  On September 10, 2013, plaintiff learned that Citibank had reversed certain recent payments he had made from his Citibank account, basing the move on the "outrageous lie" that the payments had been made with "fake checks."  (*Id*. ¶ 32-33.)  Plaintiff paid more than a dozen visits to various branches; each time, he was "thrown out like a common criminal."  (*Id.* ¶ 34.)

On September 27, 2013, FAM and Citco sued plaintiff and a related entity in the Southern District of New York, alleging he had stolen approximately $2 million from the investment funds he had purportedly managed.  (*Id.* ¶ 35; RJN, Ex. A.)  On October 16, 2013, that court issued a temporary restraining order, enjoining Citibank from permitting withdrawals by Muho.  (RJN, Ex. C at 3.)  On October 25, 2013, the court issued an order of attachment directed at any of Muho's Citibank accounts (among other sources) to secure the sum at issue.  (RJN, Ex. D.)  A default judgment was ultimately entered against him for more than $2 million on April 4, 2014.  (RJN, Ex. B.)

Plaintiff now seeks hundreds of millions of dollars in compensatory and punitive damages from Citibank, alleging Citibank's refusal to permit him to withdraw $40,000 from his account prevented him from successfully prosecuting FAM and Citco.  (Complaint ¶¶ 14, 56.)

## II.  DISCUSSION

### A.  Legal Framework

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  All allegations of material fact are taken as true.  *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pursuant to Rule 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

United States District Court
Northern District of California

United States District Court
Northern District of California

1   cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)

2   (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).  For

3   purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

4   complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher*

5   *v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be

6   resolved in favor of the pleadings.  *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

7            However, mere conclusions couched as factual allegations are not sufficient to state a

8   cause of action.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem.*

9   *Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim

10  [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim is plausible on its

11  face "when the plaintiff pleads factual content that allows the court to draw the reasonable

12  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus,

13  "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

14  reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

15  plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

16           **B.     Analysis**

17                **i.    Count I: Breach of Contract**

18           Under Count I, plaintiff alleges breach of contract by Citibank, stating that Citibank agreed

19  to: hold his money, keep it safe for him, and make it available to him around the clock; let him

20  close his account at any time and for any reason; keep him informed; act in good faith; and not act

21  illegally.  (Complaint ¶¶ 37-40.)  Plaintiff alleges Citibank breached this "agreement" (*id.* at ¶¶ 41-

22  43), however plaintiff fails to identify specifically in the complaint any details surrounding the

23  nature of the purported agreement, such as whether it was written or oral.

24           In opposing the motion, Citibank submitted a copy of Muho's August 7, 2009 account

25  signature card, attached to a sworn declaration by Dean Keenan, the Citibank manager at Muho's

26  home branch and an employee there for the past eight years.  (Declaration of Dean Keenan in

27  Support of Defendant's Motion to Dismiss ["Keenan Dec." (Dkt. No. 11)] at ¶ 2; Keenan Dec.,

28  Ex. A.)  The card appears to bear Muho's signature and states that "[b]y signing below, I . . . agree

1    to be bound by any agreement governing any account opened in the title indicated on this card."

2    (Keenan Dec., Ex. A.)  The account title is "Gerti Muho."  (*Id.*)  Keenan states that Muho's

3    accounts were governed by a written account agreement entitled "Client Manual, Consumer

4    Accounts," effective February 15, 2009, and that the bank's standard practice has been to provide

5    a copy of the agreement (presumably to the account holder) when a new account is established.

6    (Keenan Dec., ¶ 3.)  The referenced agreement notes that the bank may refuse withdrawal requests

7    if it suspects "fraud, irregularity, or illegality."  (Keenan Dec., Ex. B at 33.)

8            In his opposition brief, plaintiff argues the relevant agreement—and the subject of his

9    complaint—is an implied one, not the written contract submitted by Citibank.  Plaintiff does not

10   dispute that it is his signature on the signature card submitted by Citibank.  He also does not

11   dispute that he received a copy of the written agreement submitted when he opened his account.

12   However, he argues that he never referred to a written contract in the complaint, only an

13   "agreement," and that the agreement he referred to was implied, not written.  He also argues the

14   written contract is not valid because it is unsigned and void or voidable under California law.

15   Additionally, as noted by defendant, many of the statutory provisions plaintiff cites in support of

16   his breach of contract claim have been repealed.  Cal. Fin. Code §§ 952-954.  He also cited a code

17   section that might apply to Citibank's conduct prior to its receipt of a relevant order from the New

18   York action, but would not apply after that date.  Cal. Fin. Code § 1450.

19           The elements for breach of an express or implied contract are: "(1) the existence of the

20   contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the

21   defendant; and (4) damages."  *Bergman v. Bank of Am.*, Case No. 13-cv-00741 JCS, 2013 WL

22   5863057, at *15 (N.D. Cal. Oct. 23, 2013) (quoting *First Commercial Mortg. Co. v. Reece*, 89 Cal.

23   App. 4th 731, 745 (2001)).  If plaintiff seeks to allege an implied contract, the complaint must

24   contain sufficient factual allegations to support these elements, including the existence of such an

25   agreement.  *See id.* ("'Facts alleging a breach, like all essential elements of a breach of contract

26   cause of action, must be pleaded with specificity.'") (quoting *Levy v. State Farm Mut. Auto Ins.*

27   *Co.*, 150 Cal. App. 4th 1, 5 (2007)).  The present complaint fails to do so.  Therefore, as to Count

28   I, the motion is **GRANTED WITH LEAVE TO AMEND**.

United States District Court
Northern District of California

1    As noted by defendant, the Court may take notice of a written agreement upon which a

2    plaintiff's claims are based under the doctrine of incorporation.  To the extent plaintiff argues in

3    an amended complaint the existence of an implied contract and deliberately omits reference to the

4    signature card or written agreement, that may raise "the spectre" that his failure to do so is "a

5    means of avoiding Rule 12(b)(6) dismissal."  *Birdsong v. AT&T Corp.*, Case No. C12-6175 TEH,

6    2013 WL 1120783, at *2 (N.D. Cal. Mar. 18, 2013).  Moreover, "an action based on an implied-

7    in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract

8    covering the same subject matter."  *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal.

9    App. 4th 194, 203 (1996).  In such a case, a plaintiff must, with sufficient specificity to state a

10   valid claim, "allege that the express contract is void or was rescinded in order to proceed with its

11   quasi-contract claim."  *See id.*

12       **ii.    Count II: Conversion**

13   Plaintiff's second cause of action is for conversion.  "The elements of a conversion are the

14   plaintiff's ownership or right to possession of the property at the time of the conversion; the

15   defendant's conversion by a wrongful act or disposition of property rights; and damages.  It is not

16   necessary that there be a manual taking of the property; it is only necessary to show an assumption

17   of control or ownership over the property, or that the alleged converter has applied the property to

18   his own use."  *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 221 (2003) (internal

19   quotations omitted).  To establish conversion, therefore, a plaintiff must allege a right to

20   possession of the property in question at the time of the conversion.

21   The Court has taken judicial notice of the $2 million default judgment against Muho and

22   related restraining order and order of attachment targeting Muho's Citibank accounts.  These

23   judicially noticed documents demonstrate that once Citibank was obligated to comply with those

24   orders, Muho did not have a right to possess the funds in his Citibank account, which the

25   complaint alleges totaled approximately $40,000.  Similarly, as a matter of law, Citibank did not

26   undertake a "wrongful act" in complying with a court order.  The Court takes no position on

27   whether any claim exists as to Citibank's conduct *prior* to its compliance with the referenced

28   orders.

1    Thus, the complaint, at least with respect to the defendant's compliance with a court order,

2    fails to state a claim for conversion.  To the extent anything else remains of this claim, the motion

3    is **GRANTED WITH LEAVE TO AMEND**.

4      **iii.**  **Count III: Trespass to Chattels**

5      Plaintiff's third cause of action alleges trespass to chattels.  "Trespass to chattels 'lies

6    where an intentional interference with the possession of personal property has proximately

7    cause[d] injury.'"  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000)

8    (quoting *Thrifty-Tel v. Bezenek*, 46 Cal. App. 4th 1559 (1996)).  To show trespass to chattels, a

9    plaintiff must allege ownership of the property in question.  *See Intel Corp. v. Hamidi*, 30 Cal. 4th

10   1342, 1350 (2003).  The complaint alleges that Citibank "withheld from Plaintiff his own money"

11   and that he "absolutely owned the money he deposited in his Citibank account."  (Complaint ¶¶

12   41, 47.)

13     Defendant argues this claim must fail because money is not a chattel, citing in support of

14   this proposition a case from the Southern District of New York.  *See Chevron Corp. v. Donziger*,

15   871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) ("Money is fungible and not properly characterized as a

16   'chattel.'") (citing Black's Law Dictionary 229 (7th ed.1999) (defining "chattel")).  However, a

17   later case in that district read *Chevron* as acknowledging "that a claim based on interference with

18   funds could lie where the funds 'can be described, identified, or segregated in the manner that a

19   specific chattel can be and when [they are] subject to an obligation to be returned.'"  *DeAngelis v.*

20   *Corzine*, Case No. 11-cv-7866, 2014 WL 1695186, at *283 (S.D.N.Y. Apr. 16, 2014) (quoting

21   *Chevron Corp.*, 871 F. Supp. 2d 259 n.172) (alteration in original).

22     As with his conversion claim, plaintiff fails to state a claim for trespass to chattels against

23   Citibank for its actions taken in direct compliance with the relevant orders in the New York action.

24   With respect to the question of whether money may constitute a chattel, the Court need not reach

25   the issue.  As shown, neither party has provided the Court with sufficient binding authority to

26   resolve the issue as a matter of law.  Thus, as with the conversion claim, to the extent anything

27   else remains of this claim, the motion is **GRANTED WITH LEAVE TO AMEND**.

28

United States District Court
Northern District of California

8

### iv.    Count IV: Interference with Economic Relations

Plaintiff's fourth claim is for "interference with economic relations."  The Court reads this claim as referring to the tort of intentional interference with prospective economic relations.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 381 (1995) ("[W]e use the phrase 'interference with economic relations' to refer to the tort generally known as 'intentional interference with prospective contractual or economic relations' and to distinguish it from the cognate form, 'intentional interference with contract.'").  Defendant argues the complaint has failed to allege facts supporting the elements thereof: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987).

The Court agrees.  The complaint does not properly allege sufficient knowledge by Citibank of Muho's purported economic relationship with any third parties that would have been impacted by Citibank's conduct.  Plaintiff's email to Citibank—the text of which is directly incorporated in the complaint—would not have put Citibank on sufficient notice of a relevant relationship between plaintiff and a third party.

Despite the plain language of the complaint, Muho argues in his opposition that the claim actually is for "interference with contract."  Even if so, the complaint would fail as it does not identify the specific contract of which defendant knew and intended to disrupt.  *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)

To the extent this claim is premised on plaintiff's alleged relationships with the U.S. Department of Education, BMW Finance, American Express, and Paypal based on Citibank's "outrageous lie" that plaintiff was passing "fake checks," the claim sounds in fraud and there plaintiff must satisfy the heightened pleading requirements of Rule 9(b).  Where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] ... the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading

United States District Court
Northern District of California

1    of that claim as a whole must satisfy the particularity requirement of [Federal Rule of Civil

2    Procedure] 9(b)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003)

3    (holding "the circumstances constituting the alleged fraud [must] be specific enough to give

4    defendants notice of the particular misconduct [alleged] so that they can defend against the charge

5    and not just deny that they have done anything wrong" (internal quotations and citations omitted));

6    *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

7    circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

8    person's mind may be alleged generally."); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

9    (To be alleged with particularity under Rule 9(b), a plaintiff must allege "the 'who, what, when,

10   where, and how'" of the alleged fraudulent conduct.).

11          The motion as to Count IV is therefore **GRANTED WITH LEAVE TO AMEND**.

12                 **v.     Count V: Intentional Infliction of Emotional Distress**

13          In his fifth count, Muho alleges intentional infliction of emotional distress by Citibank.

14   The elements for the claim are "(1) outrageous conduct by the defendant; (2) the defendant's

15   intention of causing or reckless disregard of the probability of causing emotional distress; (3) the

16   plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation

17   of the emotional distress by the defendant's outrageous conduct."  *Fletcher v. W. Nat'l Life Ins.*

18   *Co.*, 10 Cal. App. 3d 376, 394 (Cal. Ct. App. 1970).  The Court finds that Citibank's conduct as

19   alleged, in light of the judicially noticed default judgment and related orders, was not outrageous.

20   The Court also finds that plaintiff failed to put forth specific factual allegations establishing that he

21   personally suffered severe or extreme emotional distress as a result of Citibank's conduct.  Thus,

22   as to Count V, the motion is also **GRANTED WITH LEAVE TO AMEND**.

23                 **C.     Leave to Amend**

24          Leave to amend is liberally granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v.*

25   *West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  One exception to this general rule of

26   permissiveness, however, is where amendment would be futile.  *Foman*, 371 U.S. at 182; *Smith v.*

27   *Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

28          In light of this liberal standard, the Court grants plaintiff leave to amend his claims that are

dismissed herein.  The Court notes that it is highly skeptical of plaintiff's ability to prove

successfully any claim to the extent that it is premised upon Citibank's compliance with relevant

orders in the New York action.  Citibank's compliance with those court orders is not likely to

result in liability in connection with any of plaintiff's claims.

Plaintiff shall file a First Amended Complaint ("FAC") by no later than **February 2, 2015**.

The FAC must comport with the guidelines set forth in this Order.  Plaintiff must take care to

satisfy the requirements of Rule 8 and provide "*a short and plain statement* of [each] claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (emphasis added).  Further,

plaintiff is reminded to review his obligations under Federal Rule of Civil Procedure 11(b).  If an

FAC is not timely filed, the complaint will be deemed dismissed with prejudice.

## III.   CONCLUSION

For the foregoing reasons, Citibank's Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND**.

This Order terminates Docket No. 9.

**IT IS SO ORDERED.**

Dated: January 7, 2015

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

11