1   MICHAEL R. SIMMONDS (SBN 96238)
    msimmonds@snllp.com
2   LIANA MAYILYAN (SBN 295203)
    lmayilyan@snllp.com
3   SIMMONDS & NARITA LLP
    44 Montgomery Street, Suite 3010
4   San Francisco, CA 94104-4816
    Telephone: (415) 283-1000
5   Facsimile:   (415) 352-2625

6

7   Attorneys for Defendant
    Citibank N.A.

8

9                  UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12  GERTI MUHO,                    )  CASE NO.: 3:14-cv-03219-HSG
                                   )
13            Plaintiff,           )  **DEFENDANT'S NOTICE OF**
                                   )  **MOTION AND MOTION TO**
14       vs.                       )  **DISMISS FIRST AMENDED**
                                   )  **COMPLAINT; MEMORANDUM OF**
15                                 )  **POINTS AND AUTHORITIES IN**
                                   )  **SUPPORT OF MOTION**
16  CITIBANK N.A.,                 )
                                   )  Date: June 11, 2015
17            Defendant.           )  Time: 2:00 p.m.
                                   )  Courtroom: 15 - 18th Floor
18   _____)
                                   )  The Honorable Haywood S. Gilliam Jr.
19

20

21

22

23

24

25

26

27

28

TO PLAINTIFF PRO SE AND THE COURT:

PLEASE TAKE NOTICE that on June 11, 2015, at 2:00 p.m. in courtroom 15 of the above Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Haywood S. Gilliam Jr. presiding, Defendant Citibank N.A. ("Citibank") will and hereby does move this Court for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the claims against it in the First Amended Complaint.

This motion is made on the grounds that the complaint fails to state facts sufficient to constitute a cause of action against Citibank for breach of contract, conversion, trespass to chattels, interference with economic relations, intentional infliction of emotional distress, or negligence.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the previously filed Request for Judicial Notice In Support of Defendant's Motion to Dismiss Complaint (Doc. No. 10), the previously filed Declaration of Dean Keenan In Support of Defendant's Motion to Dismiss Complaint (Doc. No. 11), all other papers on file in this action, and such other and further evidence or argument as the Court may allow at the hearing of this matter.

DATED: April 7, 2015       SIMMONDS & NARITA LLP
                                             MICHAEL R. SIMMONDS
                                             LIANA MAYILYAN

                                             By:   /s/Liana Mayilyan
                                                    Liana Mayilyan
                                                    Attorney for Defendant
                                                    Citibank N.A.

MUHO v. CITIBANK N.A. (CASE NO. 3:14-cv-03219-HSG)
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM IN SUPPORT          i

1

2

**TABLE OF CONTENTS**

3   I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.     PROCEDURAL HISTORY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5   III.    STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6           A.   The New Allegations Of The First Amended Complaint . . . . . . . . . . . 3

7           B.   The Remaining Allegations Of The First Amended Complaint . . . . . . . 6

8           C.   The New York Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9           D.   The Florida Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11          A.   Legal Standard Governing Motions To Dismiss  . . . . . . . . . . . . . . . . . 9

12          B.   Muho Still Has Not Stated A Claim For Breach of Contract . . . . . . . . 10

13          C.   Muho Still Has Not Stated A Valid Claim For Conversion  . . . . . . . . . 13

14          D.   Once Again, Muho's Third Cause Of Action For Trespass To Chattels
15               Fails As A Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                E.   Muho Has Not Alleged Sufficient Facts To Support A Cognizable
16               Interference With Economic Relations Claim  . . . . . . . . . . . . . . . . . . . 16

17          F.   Muho Cannot Cure His Claim For Intentional Infliction Of Emotional
18               Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19          G.   Muho Fails To State A Valid Claim For Negligence . . . . . . . . . . . . . . 20

            H.   Leave To Amend Should Be Denied  . . . . . . . . . . . . . . . . . . . . . . . . . . 20
20
    V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Conley v. Gibson*,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Galbraith v. County of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hydranautics v. FilmTec Corp.*,
204 F.3d 880 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Gottheiner*,
703 F.2d 1136 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Johnson v. Riverside Healthcare Sys., L.P.*,
534 F.3d 1116 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lipton v.PathoGenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miron v. Herbalife Intern., Inc.*,
11 Fed. Appx. 927 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ogulnik v. Brumbaugh*,
1999 WL 649646 (N.D. Cal., Aug. 23, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Taylor v. Sturgell*,
553 U.S. 880 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Young v. Facebook, Inc.*,
790 F. Supp. 2d 1110 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Yount v. Acuff Rose-Opryland*,
103 F.3d 830 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# STATE CASES

*Berkley v. Dowds,*
152 Cal. App. 4th 518 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Della Penna v. Toyota Motors Sales, U.S.A., Inc.,*
11 Cal. 4th 376 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Farmers Ins. Exch. v. Zerin,*
53 Cal. App. 4th 445 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*First Comm. Mort. Co. v. Reece,*
89 Cal. App. 4th 731 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fletcher v. Western Nat'l Life Ins. Co.,*
10 Cal. App. 3d 376 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Intel Corp. v. Hamidi,*
30 Cal. 4th 1342 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lance Camper Mfg. Corp. v. Republic Indem. Co.,*
44 Cal. App. 4th 194 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Oakdale Vill. Group v. Fong,*
43 Cal. App. 4th 539 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ortega v. Kmart Corp.,*
26 Cal. 4th 1200 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Youst v. Longo,*
43 Cal. 3d 64 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# OTHER AUTHORITIES

4 Witkin, *Cal. Procedure* (5th ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# I.  __INTRODUCTION__

The Court previously granted the motion to dismiss the original omplaint filed by Plaintiff Gerti Muho ("Muho"), but granted him leave to amend.  The Court identified specific deficiencies that needed to be addressed if he chose to file an amended complaint.  Muho ignored this.  Other than adding irrelevant and even more unintelligible allegations, the First Amended Complaint ("FAC") is essentially identical to the original complaint.  Muho effectively concedes that he is unable to plead a valid claim for relief against defendant Citibank N.A. ("Citibank").  The FAC should be dismissed without leave to amend.

Muho, allegedly a registered investment adviser, was adjudged by the United States District Court for the Southern District of New York to have stolen $2,067,377.24 from an entity called Soundview Elite Ltd. ("Soundview") by transferring that sum from an account in Monaco to accounts in his name or control at Citibank.  In that action, Soundview sued Muho for conversion.  That court ordered a freeze on the funds at Citibank, and judgment was subsequently entered against Muho in that case for the full amount converted.  First upon suspicion of illegal activity, and then in compliance with restraining and attachment orders of the court in New York, Citibank refused to permit withdrawals or transfers.

Muho has now sued Citibank, seeking compensatory damages of over $50,000,000 and punitive damages of $250,000,000.  The FAC purports to allege six causes of action: breach of contract, conversion, trespass to chattels, intentional interference with economic relations, intentional infliction of emotional distress, and negligence.  But Muho has done nothing to cure his original complaint to state a valid claim for relief.  This frivolous complaint should be dismissed without leave to amend.

Muho cannot state a valid claim for breach of contract.  He has not specified any provision of agreement governing the account that Citibank allegedly breached.  Nor has he pled facts sufficient to show his performance under the contract.  As a matter of law, Muho is collaterally estopped from contesting that he did not steal the funds.

Muho cannot allege that Citibank breached the account agreement with Muho by refusing to permit withdrawals from the account, where the express terms of the agreement authorize Citibank to refuse a withdrawal request when Citibank suspects illegality or when Citibank is ordered by a court not to permit the withdrawals.  Nor has Muho alleged facts sufficient to allege an implied contract.

Muho's Second and Third Causes of Action, for conversion and trespass to chattels, must also be dismissed without leave to amend.  These claims are barred by collateral estoppel.  It has already been adjudicated in the Southern District of New York that the funds in question were stolen by Muho and do not belong to him.  Muho cannot allege ownership of the funds in this action.

Muho's Fourth Cause of Action, for intentional interference with economic relations, also fails.  Like the Complaint, the FAC is devoid of any allegations suggesting that Citibank had knowledge of or intended to disrupt any economic relations Muho had with any third parties.  Muho cannot allege any "wrongful" action or conduct by Citibank, or that he suffered any economic harm.

Muho's Fifth Cause of Action, for intentional infliction of emotional distress, fails to plead any extreme or outrageous conduct by Citibank, and Muho fails to allege that he suffered severe emotional distress.

Lastly, Muho now purports to add a Sixth Cause of Action, for negligence.  It also fails.  He has not alleged any of the required elements of a claim for negligence.  Muho's conclusory allegations do not state a valid claim for relief.

Muho is a vexatious litigant.  Related lawsuits have previously been dismissed *sua sponte* by the Northern District of California and the Southern District of Florida.  The FAC in this case should be dismissed pursuant to Rule 12(b)(6) without leave to amend.

//

//

//

## II.   PROCEDURAL HISTORY

On June 10, 2014, the original complaint in this action was filed by Muho in the Superior Court of California, Alameda County, asserting causes of action for: (1) breach of contract; (2) conversion; (3) trespass to chattels; (4) interference with economic relations; and (5) intentional infliction of emotional distress.  *See* Doc. No. 1, Ex. A.  On July 16, 2014, Citibank timely removed the action to this Court.  *See id.*  On July 23, 2014, Citibank filed a motion to dismiss pursuant to Rule 12(b)(6).  *See* Doc. No. 9.  On January 7, 2015, the Court issued an Order dismissing the Complaint, requiring any amended complaint to be filed no later than February 2, 2015.  *See* Doc. No. 36 (hereinafter "the January 7, 2015 Order").  The Court specifically noted that the amended complaint "must comport with the guidelines set forth in this Order," and that Muho "must take care to satisfy the requirements of Rule 8 and provide "*a short and plain statement of [each] claim* showing that the pleader is entitled to relief."  *See id.* at 11:6-8 (emphasis in original, internal citations omitted).

Rather than file an amended complaint, on January 21, 2015 Muho took an appeal to the Ninth Circuit from the grant of Citibank's motion to dismiss with leave to amend.  *See* Doc. No. 38.  On February 25, 2015, pursuant to Citibank's motion, the Ninth Circuit dismissed the appeal for lack of jurisdiction.  *See* Doc. No. 44.

On March 10, 2015, this Court ordered Muho to file a First Amended Complaint no later than March 24, 2015 or face dismissal with prejudice for failure to prosecute.  *See* Doc. No. 47.  Muho filed the FAC on March 24, 2015.  *See* Doc. No. 49.

## III.   STATEMENT OF FACTS

### A.   The New Allegations Of The First Amended Complaint

The Court's January 7, 2015 Order set forth a comprehensive review of the allegations in the original complaint and detailed its deficiencies.  Despite adding several new paragraphs and a new cause of action for negligence, the FAC fails to include any allegations addressing the deficiencies of Muho's original complaint.  The

new allegations are found in paragraphs 3-19, 22-29, and 100-102 of the FAC.  They are irrelevant and, for the most part, unintelligible, as detailed below.

The first five paragraphs of Muho's new allegations (FAC ¶¶ 4-8), reference irrelevant background regarding "Leveraged Hawk, Inc."  For example, Muho claims he is the "registered investment adviser with the Securities and Exchange Commission" of "mega-fund Leveraged Hawk, Inc." whose assets, according to Muho, "exceed USD 1 billion."  *See id.* at ¶¶ 4-5.  He claims that Leveraged Hawk "owns rights or claims to payments against its own former co-managers, Fletcher Asset Management, Inc. ('FAM') and Citco Group, Ltd. ('Citco')."  *See id.* at ¶ 6.  Incoherently, Muho alleges that Leveraged Hawk "expects . . . to be satisfied by the hedge funds and the hedge fund managers services, like Citibank, whose willful ignorance over the years enabled the very taking of the assets giving rise to Leveraged Hawk's claims."  *See id.* at ¶ 8.

According to Muho, Citibank "learned about [him] and about the threat Defendant Citibank faced from Leveraged Hawk during the summer of 2013."  *See id.* at ¶ 9.  He does not identify what threat Citibank was allegedly facing from Leveraged Hawk.  Muho incomprehensibly alleges that a senior vice president of Citibank became obsessed with Muho's profile on LinkedIn, and that Citibank "began its campaign to terrorize [Muho] . . . after its executives first developed their Internet craze" by "usurp[ing] its role as holder of deposits for [Muho] and for [Muho] related entities."  *See id.* at ¶¶ 9-10.

Muho purports to attach an article dated August 2, 2013 as Exhibit A to his FAC (though none was attached) which according to him summarizes the suit he filed on behalf of Leveraged Hawk against Global Hawk Ltd in the Northern District of California.  *Id.* at ¶ 13.  He then alleges, again incoherently, that he needed a trip to Delaware to "access rest of $$ and then begin to really play" but that he could not take the trip because his "mouth couldn't close from the first visit at the Citibank branch weeks before."  *See id.* at ¶ 14.  Muho allegedly was "busy chasing away" any law

firms that would make "the terrorizing of Citibank to stop." *See id.* at ¶ 15.  His allegations become even more unintelligible as he alleges that "Citibank created world where lawyers only advice was something along the line of go /self." *Id.*

Muho admits in the FAC that he is not a lawyer and that he has failed the California Bar Exam twice but that he "plays lawyer only when playing lawyer is [his] only chance to continue to play at all." *See id.* at ¶ 12.  He also admits that "a lawyer could have helped." *See id.* at ¶ 16.  The FAC then proceeds to quote an email from "an honest friend from law school" whom Muho asked for help with his "writing." *See id.* at ¶ 17.  In the quoted email, the friend suggests to Muho that he may have suffered a "psychotic episode" while interning at the "Firm" and that he should stop wasting his time with this litigation. *See id.*  The email also states that this "civil stuff is a sham," and suggests to Muho that he should see a "shrink." *See id.*  The email further states that the friend hopes Muho is not "facing criminal prosecution," and suggests that he consult with an attorney who handles "white collar crimes as a speciality." *See id.*  Muho claims this "truly depressing email" is a "prime example of the nightmare Citibank created for [Muho]" in his "fight for what is now Leveraged Hawk." *See id.* at ¶ 18.  Muho alleges that he never "succeeded in finishing off Citco and FAM" in the lawsuit he had filed in the Northern District of California because "Citibank stopped that, costing [Muho] hundreds of millions in lost gains and more pain and sufferings than can be measured by output of the Fed's printing presses." *Id.* at ¶ 19.

The new allegations in the FAC go on to alleged that in 2009, Muho opened a deposit account (the "Account") with Citibank in Berkeley, California. *See id.* ¶ 22.  He claims because Citibank had more "dispersed branches," it made Citibank "a far more superior product" than "any hole in the ground or any mattress" where Muho could withdraw or deposit funds. *See id.*  Muho further alleges that even if a contract existed between Citibank and Muho, "the fraud exception arising from the failure to discuss material terms" makes the contract "to be an implied in fact contract." *See id.* ¶ 23.  He claims the contract became "implied in fact by the parties conduct over the

1    subsequent four years of dealings," and that it was modified with new consideration by

2    both parties with "no written agreements."  *See id.* ¶¶ 24-25.  Without citing to any

3    authority, Muho alleges that California law makes it "absolutely clear that a contract

4    between a depositor and its bank is . . . an implied in fact contract."  *See id.* ¶ 27.

5          The FAC also purports to assert a new cause of action for negligence.  *See id.* ¶¶

6    100-102.  Muho claims that Citibank owed a legal duty to Plaintiff to exercise ordinary

7    care but that Citibank breached this duty by (1) failing to comply with the parties'

8    agreement; and (2) failing to comply with well-established clear and unambiguous

9    laws of the State of California that governed the relationship.  *See id.*     ¶ 101.

10   According to Muho, "Citibank breach proximately caused" Muho's injury.  *See id.* ¶

11   102.

12         **B.      The Remaining Allegations Of The First Amended Complaint**

13         The rest of the FAC is nearly identical to the original.  Muho alleges that

14   Citibank "thwarted" his efforts to sue entities by denying him access to his own

15   deposits, stealing his funds, sending him "chasing ways to close his account,"

16   humiliating his person and his trade, and leaving him "stranded and in physical

17   danger."  *See id.* ¶¶ 20-21.  He claims that on or about August 19, 2013, he was

18   "forced" to stop using the Account after "Citibank violated its agreement with Plaintiff

19   and stole Plaintiff's funds" by refusing to allow him access to the Account when he

20   tried to withdraw $500.  *See id.* ¶¶ 30-31.  Muho further alleges that he was directed to

21   discuss the Account only with a Ms. Ivona Sinovic, allegedly a Citibank employee in

22   New York City.  *See id.* ¶¶ 32-37.  When he spoke with Ms. Sinovic, she allegedly told

23   him that "the 'back office' had blocked Plaintiff's accounts and that she 'had no idea

24   what the issue was,'" but that she would have someone contact him, which did not

25   happen.  *See id.* ¶¶ 39-40.  He also claims that he visited a local Citibank branch in

26   Miami but again was unable to access or close the Account.  *See id.* ¶¶ 41-43.  He also

27   alleges that Citibank never responded to his "request for written confirmation of any

28   accounts tied to Plaintiff at Citibank facing any restrictions."  *See id.* ¶ 48.

The FAC, like the original complaint, purports to sue Citibank for: (1) breach of contract; (2) conversion; (3) trespass to chattels; (4) interference with economic relations; and (5) intentional infliction of emotional distress. *Id.* ¶¶ 53-99. Specifically, Muho alleges that Citibank breached the agreement governing the Account "when it withheld from Plaintiff his own money, failed to keep his money safe for him," refused to close and inform Plaintiff about the Account and failed to act in good faith. *Id.* ¶ 58.  He also alleges Citibank interfered with his "ownership" of the funds by conversion "when it withheld them without reason" (*id.* ¶ 65), and committed trespass to chattels by denying his request to have his funds returned to him. *Id.* ¶ 75.

Attempting to allege a cause of action for "interference with economic relations," Muho alleges that he informed Citibank "that he required access to the money Plaintiff had deposited with Citibank in order to pay court fees in connection with Plaintiff's suit [in the Northern District of California] against FAM and Citco, which would likely result in an economic benefit to Plaintiff and Plaintiff's Investors due to the overwhelming evidence Plaintiff had amassed against FAM and Citco. Citibank thus knew of the economic relationship between Plaintiff and his Investors and FAM and Citco." *Id.* ¶ 82.  But Citibank still refused Plaintiff all access to his accounts (*id.* ¶ 83), and as "a result of Citibank's action, Plaintiff lost his expected benefit to himself and his Investors." *Id.* ¶ 84.

Muho's claim for intentional infliction of emotional distress is replete with conclusory allegations, culminating in the allegation that Citibank "knew Plaintiff would be harmed, and would be vulnerable to and would suffer emotional distress because any reasonable person would in the circumstances," and that any reasonable person would "so suffer when his trusted bank suddenly decided to steal from him with no explanation." *Id.* ¶ 94.

## C.   The New York Action

Similar to the prior motion to dismiss,  Citibank relies on the notice of filings in *Soundview Elite Ltd., et al. v. Gerti Muho, et al.*, United States District Court, Southern

1   District of New York, Case No. 1:13-cv-06895-AT, filed September 27, 2013 ("the

2   New York Action").[1]  The New York Action was brought against Muho to recover

3   funds he stole from Soundview.  Specifically, the complaint alleged that on or about

4   August 8, 2013, Muho "fraudulently induced" HSBC Private Bank in Monaco to

5   transfer $2,067,377.24 from Soundview's HSBC account to a Citibank account.  *See*

6   RFJN, Ex. A, ¶¶ 26-34.  The plaintiffs in the New York Action brought causes of

7   action against Muho and the entity he controls, Leveraged Hawk, for conversion and

8   unjust enrichment.  They alleged that they owned the money in the HSBC account, and

9   that Muho took actions "essentially amounting to theft" to effect "an unauthorized and

10  unlawful transfer" of those funds to himself.  They sought full restitution and other

11  damages.  *Id.* ¶¶ 36-41.

12        On April 4, 2014, the court in the New York Action entered a default judgment

13  against Muho totaling $2,194,185.89.  *See* RFJN, Ex. B.

14        In the New York Action, the court entered a temporary restraining order on

15  October 16, 2013, enjoining Citibank from withdrawing, transferring or otherwise

16  _____

17        [1] In support of this Motion, Citibank relies on its previously filed Request for

18  Judicial Notice in Support of Motion to Dismiss (Doc. No. 10) ("RFJN"), which the
    Court granted in dismissing the original complaint. *See* Doc. No. 36 at 2:4 n.2.  Attached

19  to the RFJN are the Complaint ("Exhibit A"), Default Judgment ("Exhibit B"), Order to
    Show Cause With Temporary Restraining Order for a Preliminary Injunction, Order of

20  Attachment, and Order Permitting Expedited Discovery ("Exhibit C"), Order of
    Attachment ("Exhibit D"), and Order dated February 28, 2014 ("Exhibit E"), in the

21  matter *Soundview Elite Ltd., et al. v. Gerti Muho, et al.*, United States District Court for
    the Southern District of New York, Case No. 1:13-cv-06895-AT; the Complaint

22  ("Exhibit F") and the Civil Docket Sheet ("Exhibit G") in the matter *Gerti Muho v.*

23  *Alphonse Fletcher Jr., et al.*, United States District Court for the Southern District of
    Florida, Case No. 1:14-cv-20568-KMM; the Civil Docket Sheet ("Exhibit H"), Order

24  Reassigning case To District Judge; And Report And Recommendation To Dismiss Case

25  Without Prejudice filed on October 25, 2013 ("Exhibit I"), and Order Adopting
    Magistrate Judge's Report And Recommendation; Dismissing Case Without Prejudice;

26  Certificate of Service dated November 26, 2013 ("Exhibit J"), in the matter *Leveraged*

27  *Hawk, Inc. v. Global Hawk, Ltd. et al.*, United States District Court for the Northern
    District of California, Case No. 3:13-cv-03469-MMC.

28

1   disposing of the funds alleged to have been converted by Muho.  *Id.* Ex. C.  The court

2   also entered, on October 25, 2013, an order of attachment, ordering the Sheriff of New

3   York City to levy upon any funds, property, investments and assets of Muho,

4   "including any bank accounts where either Defendant [Muho or Leveraged Hawk] or

5   both Defendants have an ownership interest, including any accounts at Citibank, N.A.,

6   for the purpose of securing and satisfying" the sum of $2,067,337.24.  *Id.* Ex. D.

7            **D.      The Florida Action**

8            This is not the first action by Muho against Citibank.  He filed *Gerti Muho v.*

9   *Alphonse Fletcher Jr., et al.*, United States District Court, Southern District of Florida,

10  Case No. 1:14-cv-20568-KMM, on February 14, 2014 ("the Florida Action") against

11  46 defendants, including Citibank and Ivona Sinovic.  *See* RFJN, Ex. F.  In the Florida

12  Action, Muho expressly alleged (and therefore admitted) that he instructed HSBC

13  Private Bank (Monaco) to transfer "about $2 million" to his Leveraged Hawk account

14  at Citibank.  *Id.*  ¶ 192.

15           The Florida Action was dismissed *sua sponte* in a minute order stating: "This

16  claim is frivolous.  The Eleventh Circuit has recognized the inherent power of courts to

17  dismiss frivolous suits without giving notice to the parties, and has noted that this

18  broad, inherent power, not based on statute, applies to actions that are a sham;

19  frivolous; harassing and vexatious; vexatious; . . . [or] brought in bad faith. . . .

20  Plaintiff's claim is incoherent and incomprehensible.  Thus, this claim is DISMISSED

21  WITHOUT PREJUDICE."  *See* RFJN, Ex. G at pp. 4-5.

22  **IV.    ARGUMENT**

23           **A.      Legal Standard Governing Motions To Dismiss**

24           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must

25  be dismissed if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ.

26  P. 12(b)(6).  To "state a claim" for relief, a complaint must set forth a "short and plain

27  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

28  The decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*") include the analytical framework that courts must use when evaluating motions to dismiss.

In *Twombly*, the Supreme Court expressly rejected the "no set of facts" test that had been articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Twombly*, 550 U.S. at 562-63. The Court held that although "detailed factual allegations" are not required at the pleading stage, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. There must be sufficient facts pled to state a claim to relief that is "plausible on its face." *Id.* at 570. In *Iqbal*, the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Thus, the first step when evaluating a motion to dismiss is to identify the legal conclusions, because they "are not entitled to the assumption of truth." *Id.* at 679. Next, with respect to any "well-pleaded factual allegations" in the complaint "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The determination of whether a plausible claim for relief has been stated is "a context-specific task" that requires a court to "draw on its judicial experience and common sense." *Id.*

Dismissal is proper under Rule 12(b)(6) where a court finds either: 1) the lack of a cognizable legal theory; or 2) the absence of sufficient facts alleged under a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008).

### B.   Muho Still Has Not Stated A Claim For Breach of Contract

Although the Court advised Muho to "identify specifically in the complaint any details surrounding the nature of the purported agreement, such as whether it was written or oral," Muho has added nothing to the FAC. *See* January 7, 2015 Order

1   (Doc. No. 36) at 5:21-23.  Instead, the FAC relies on the exact same allegations that the

2   Court previously found insufficient.

3          The elements of breach of contract are: (1) the existence of a contract; (2)

4   performance by Plaintiff; (3) breach by the defendant; and (4) damage resulting from

5   the breach.  *See First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

6   When, as here, "a contract has been reduced to writing, a court must ascertain the

7   parties' intent from the writing alone, if possible."  *See Yount v. Acuff Rose-Opryland*,

8   103 F.3d 830, 836 (9th Cir. 1996).  Further, a plaintiff must allege the **specific**

9   **provisions** in a written contract creating the obligation defendant is said to have

10  breached.  *See Young v. Facebook, Inc.,* 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)

11  (citing *Miron v. Herbalife Intern., Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001)).  Muho

12  alleges that Citibank "breached its agreement with Plaintiff when it withheld from

13  Plaintiff his own money, failed to keep his money safe for him, refused to give his

14  money back to Plaintiff, refused to let Plaintiff close his account, refusing to inform

15  Plaintiff about his account, and when it failed to act in good faith."  *See FAC* ¶ 58.

16  Like the Complaint, the FAC fails to identify any specific provision of the agreement

17  that Citibank allegedly breached.  *See id.* ¶¶ 53-63.

18         A plaintiff may either quote the relevant contractual language verbatim or attach

19  a copy of the contract itself.  4 Witkin, *Cal. Procedure* (5th ed. 2008), Pleading, § 518,

20  at 650-51.  As before, Muho did neither.  Instead, he vaguely asserts that Citibank

21  breached its agreement "to hold Plaintiff's money, keep it safe for him, and make it

22  available to him around the clock . . . to let Plaintiff close his account at any time for

23  any reason whatsoever," yet Muho fails to identify any contractual provisions that

24  support these vague allegations.  *See id.* ¶¶ 54-55.

25         Where the plaintiff fails to attach a document referred to in the complaint, the

26  defendant may provide the document in support of a Rule 12(b)(6) motion to show that

27  it does not support the plaintiff's claim.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

28  1994), *overruled on other ground in Galbraith v. County of Santa Clara*, 307 F.3d

1119 (9th Cir. 2002).  Citibank relies in support of this motion on its previously filed
Declaration of Dean Keenan (Doc. No. 11) ("Keenan Declaration"), the Branch
Manager of its Berkeley branch, who attaches Muho's signature card and the contract
governing Muho's account.[2]  The agreement expressly provides that Citibank may
refuse a request for a withdrawal from an account where, among other reasons, the
Bank has "some suspicion of fraud, irregularity, or illegality," and where the Bank has
"been ordered by a court or other legal process not to permit the withdrawal."  *See*
Keenan Declaration, Ex. B, at p. 33.

Muho cannot legitimately contend that Citibank breached the agreement
governing his account where Citibank was restrained by the court in the New York
Action from allowing Muho to withdraw or transfer funds.  Citibank was not free to
disregard the order of the court in the New York Action, and the account agreement
expressly allowed Citibank to refuse such a request under such circumstances.  Indeed,
when Muho sought to vacate the restraining order in the New York Action, the court
denied the motion on February 28, 2014, as "frivolous."  *See* RFJN, Ex. E.  And even
before entry of the restraining order, it would not have been a breach of the account
agreement to refuse to permit a withdrawal where Citibank suspected fraud,
irregularity or illegality.  The judgment of the court in the New York Action, awarding
Soundview a return of the money Muho wrongly transferred to the Citibank account,
conclusively establishes "fraud, irregularity or illegality."  RFJN, Ex. B.

Besides the failure to allege adequately a breach of the account agreement, the
Complaint is devoid of any allegation regarding Muho's own performance under the
agreement.  This is an essential element of any claim for breach of contract.  4 Witkin,
*Cal. Procedure* (5th ed. 2008), Pleading, § 530, at 659.  " '[I]t is elementary that one
party to a contract cannot compel another to perform while he himself is in default.' "

---

[2] Attached to the Keenan Declaration are the signature card for two accounts
opened in 2009 by Muho ("Exhibit A") and a copy of the Client Manual applicable to
Muho's accounts at issue ("Exhibit B").  *See* Doc. No. 11.

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  Muho has not cured this defect in the FAC.  As a matter of collateral estoppel, it is already established that he was using this account for fraudulent or illegal purposes in connection with the theft giving rise to the judgment against him in the New York Action.  Muho has not alleged that he deposited funds in the Account that were not stolen; that were not subject to the restraining order entered in the New York Action (RFJN, Ex. C) by October 16, 2013; that were not subject to the attachment order entered in the New York Action (*id.*, Ex. D) by October 25, 2013; and that were available for withdrawal.

The FAC, like the Complaint, also has no facts that support Muho's contention that there was an implied in fact contract between the parties.  As the Court emphasized in dismissing the Complaint:

> To the extent plaintiff argues in an amended complaint the existence of an implied contract and deliberately omits reference to the signature card or written agreement, that may raise "the spectre" that his failure to do so is "a means of avoiding Rule 12(b)(6) dismissal."

*See* January 7, 2015 Order at 7:2-5.  Muho does not allege (nor could he allege) that the agreement between the parties was void or rescinded, in order to proceed with his quasi-contract claim.  *See Lance Comper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.").

Thus, Muho's claim for breach of contract must be dismissed for the same reasons it was previously dismissed.

### C.    Muho Still Has Not Stated A Valid Claim For Conversion

Muho has again failed to state a valid claim for conversion.  "Conversion is the wrongful exercise of dominion over the property of another."  *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996).  The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property right; and (3) damages.  *Id.* at 543-44.

Muho alleges in conclusory terms that "Citibank interfered with his ownership of his funds when it withheld them without reason, cause, or right." FAC ¶ 65.[3] Muho's conversion claim fails because Muho's allegation of "ownership" directly contradicts the judgment in the New York Action, where it has been finally adjudicated that the money belonged to Soundview, not Muho, and was converted by Muho when he, without authority, caused it to be transferred from Soundview's HSBC Private Bank Monaco account to the account at Citibank. Accordingly, his claim for conversion is barred by the doctrine of collateral estoppel, based on the judgment in the New York Action. *See* RFJN, Exs. A, B.

The doctrine of collateral estoppel applies where: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (internal citations and quotation omitted); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."). All the requirements for collateral estoppel are present here. Muho was a party to the prior lawsuit. *See* RFJN, Ex. A. The question of whether Muho "essentially stole" funds from Soundview and transferred them to his Citibank accounts was "necessarily decided" on the merits by Judge Torres. *See id.*, Ex. B. Although the court entered a default judgment against Muho totaling $2,194,185.89, Muho actively participated in the litigation, even filing an "emergency motion to dissolve TRO." *See id.*, Ex. E; *see also In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("It is true that some types of judgments are not given collateral

---

[3]As a technical matter, although money can be the subject of a conversion action, it must be "a specific sum capable of identification." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997). Like the Complaint, the FAC also fails to identify any specific sum that Citibank purportedly converted.

estoppel effect because the court did not get the benefit of deciding the issue in an adversarial context. . . . The circumstances here are quite different.  Gottheiner did not simply give up from the outset.  For sixteen months he actively participated in litigation on behalf of himself and CCHCS.  That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court.  Under the circumstances we hold that the lower court did not abuse its discretion in giving collateral estoppel effect to the prior judgment and we agree. . .”); *Ogulnik v. Brumbaugh*, 1999 WL 649646, at *1 (N.D. Cal., Aug. 23, 1999) (“[I]n California, default judgments are entitled to collateral estoppel effect.”).

   Muho also cannot allege a “wrongful act” by Citibank.  The Bank was acting within the terms of its agreement with Muho, and in compliance with the restraining and attachment orders entered in the New York Action, when it refused to permit Muho to withdraw the funds (and/or close the Account after withdrawing the funds).  In dismissing the Complaint, the Court held that “Citibank was obligated to comply with those orders.”  *See* January 7, 2015 Order at 7:22-25.

### D.   Once Again, Muho’s Third Cause Of Action For Trespass To Chattels Fails As A Matter of Law

   Like the Complaint, the FAC fails to plead facts sufficient to support a claim for trespass to chattels.  This cause of action suffers from the same defect as Muho’s conversion claim.  A trespass to chattels claim “lies where an intentional interference with the possession of personal property has proximately caused injury.”  *Intel Corp. v. Hamidi,* 30 Cal. 4th 1342, 1350-51 (2003).  Assuming *arguendo* that an unspecified amount of cash in the Account constitutes a “chattel,” Muho cannot allege that the funds in the Account were his property at the time of the alleged trespass.  To the contrary, it has already been adjudicated that he stole those funds and they were *not* his property, and Muho has not alleged any facts to the contrary.  Indeed, the Court, based on these exact same allegations, has already found that Muho failed to state a claim for trespass to chattels against Citibank because “its actions taken in direct compliance

1    with the relevant orders in the New York action.," *See* January 7, 2015 Order at 8:22-

2    23 (emphasis added).

### E.    Muho Has Not Alleged Sufficient Facts To Support A Cognizable Interference With Economic Relations Claim

4        To state a valid claim for intentional interference with prospective economic

5    relations,[4] Muho must allege: (1) an economic relationship between the himself and a

6    third party containing the probability of future economic benefit; (2) defendant's

7    knowledge of the relationship; (3) intentional acts by defendant designed to disrupt the

8    relationship; (4) actual disruption of the relationship; and (5) economic harm

9    proximately caused by the acts of defendant. *See Youst v. Longo*, 43 Cal. 3d 64 (1987).

10       In dismissing the Complaint, the Court found that the Complaint failed to allege

11   "sufficient knowledge by Citibank of Muho's purported economic relationship with

12   any third parties that would been impacted by Citibank's conduct." *See* January 7,

13   2015 Order at 9:14-16.  Besides Muho's email to Citibank (FAC ¶ 46), which the

14   Court has already found to be insufficient, Muho has not pled any additional

15   allegations regarding Citibank's knowledge of a relevant relationship between him and

16   any third party. *See id.* at 9:16-18.

17       Any attempt to amend this claim would be futile.  Muho claims that Citibank

18   committed this tort by allegedly denying him access to the Account, which he allegedly

19   needed to pay court fees in connection with a lawsuit that "he" had filed in the

20   Northern District of California.  *See* FAC, ¶¶ 30-31, 82.  He claims that Citibank's

21   actions caused him to lose some unidentified "expected benefit to himself and his

22

23

24       [4] Although Muho's fourth cause of action is for "interference with *economic*

25   relations," California courts have held that the phrase "interference with economic

     relations" refers to the tort generally known as "intentional interference with prospective

26   contractual or economic relations" to distinguish it from the cognate form, "intentional

     interference with contract."  *See Della Penna v. Toyota Motors Sales, U.S.A., Inc.*, 11

27   Cal. 4th 376, 381 (1995).  In dismissing this cause of action, the Court also read this

28   claim "as referring to the tort of intentional interference with prospective economic

     relations."  *See* January 7, 2015 Order at 9:2-3.

Investors." *See id.* ¶ 84. Once again, however, Muho is attempting to allege facts that contradict facts as to which this Court may take judicial notice, and this Court need not accept Muho's allegations as true.

As it previously did, Citibank relies on the docket in the Northern District of California action to which this allegation refers, *Leveraged Hawk, Inc. v. Global Hawk, Ltd., et al.*, U.S.D.C., N.D. Cal., Case No. 3:13-cv-03469-MMC ("the Northern District of California Action"). *See* RFJN, Ex. H. There, Leveraged Hawk (not Muho) sued 35 defendants on July 25, 2013. Magistrate Judge Westmore initially denied leave to proceed *in forma pauperis*, so on September 6, 2013, the filing fee of $400 *was paid*. *Id.* at p. 4. Almost two months later, Magistrate Judge Westmore recommended that the action be dismissed for failure to prosecute. *See id.*, Ex. I. The case was reassigned to Judge Chesney for all purposes on October 28, 2013, and the docket also reflects multiple mailings from the clerk that were returned undeliverable. *Id.* Ex. H at pp. 4-5. Judge Chesney dismissed the case on November 26, 2013 for the reason expressed by Magistrate Judge Westmore (failure to prosecute), and for the additional reason that the plaintiff failed to indicate a current address as required by Local Rule 3-11(b). *Id.* Ex. J.

Thus, the dismissal of the Northern District of California Action was not caused by Muho's alleged inability to pay "court costs" resulting from the freezing of his Citibank account, as the FAC continues to allege. It was caused by the failure of the plaintiff in that case, Leveraged Hawk, to prosecute the case and comply with the rules of this Court. The dismissal occurred months after the filing fees were, in fact, paid. There was no "economic harm" to Leveraged Hawk that was caused by Citibank's alleged actions, and Muho does not even attempt to articulate how he, personally, has standing in this case to seek damages allegedly suffered by Leveraged Hawk from the dismissal of the Northern District of California Action.[5]

---

[5] In the FAC, Muho once again alleges that Citibank disrupted the economic relationship Muho had with certain creditors, such as American Express, BMW Finance,

MUHO v. CITIBANK N.A. (CASE NO. 3:14-cv-03219-HSG)
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM IN SUPPORT

17

Muho has also failed to plead that Citibank engaged in any acts that were in and of themselves unlawful.  The requirement that the plaintiff plead and prove that the defendant's interference was "wrongful" was specifically adopted by the California Supreme Court in *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 393 (1995).  The Court held that the interference must be wrongful "by some measure beyond the fact of the interference itself."  *See id.*  Subsequently, in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003), the California Supreme Court held that an act is independently wrongful if it is unlawful, which means that it must be conduct proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.  *See id.*

Here, it was Muho who acted unlawfully in stealing over $2 million from Soundview, as has already been established in the New York Action.  Nothing done by Citibank was "wrongful."  To the contrary, as already discussed above, Citibank was authorized under the agreement governing the Account to refuse a withdrawal on suspicion of illegal activity, and Citibank also acted in compliance with the restraining and attachment orders issued by the court in the New York Action in refusing to permit Muho to withdraw funds from the Account after those orders were entered.

### F.    Muho Cannot Cure His Claim For Intentional Infliction Of Emotional Distress

Muho's Fifth Cause of Action purports to allege intentional infliction of emotional distress.  It, too, fails as a matter of law.  To establish a claim for intentional infliction of emotional distress, Muho must show that: (1) Citibank engaged in extreme or outrageous conduct with intent to cause, or reckless disregard of the probability of causing, emotional distress; (2) that Muho suffered severe or extreme

---

and Paypal, because Citibank "reversed recent payments Plaintiff had made" to these parties.  *See* FAC, ¶¶ 49, 85-86.  But Muho also fails to allege any connection between this allegation and his intentional interference with prospective economic relations theory.  As the Court noted, this claim "sounds in fraud and there plaintiff must satisfy the heightened pleading requirements of Rule 9(b)."  *See* January 7, 2015 Order at 9:25-26.  Muho ignored this directive.

1    emotional distress; and (3) Muho's injuries were actually and proximately caused by

2    Citibank's conduct.  *See Berkley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007).

3         Muho alleges that "Citibank's conduct in refusing to give Plaintiff the money he

4    had on deposit, or to explain its actions was outrageous conduct."  *See* FAC, ¶ 93.  As

5    the Court held in dismissing this cause of action, this conclusory allegation does not

6    suffice.  *See* January 7, 2015 Order at 10: 18-22.  Like the original complaint, the FAC

7    fails to allege facts to support a claim of "extreme and outrageous conduct that exceed

8    all bounds of human decency."  *See Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.

9    App. 3d 376, 396 (1970) (conduct is "extreme or outrageous" only if it exceeds all

10   bounds of human decency).  Indeed, Citibank was authorized to deny access to the

11   Account if the Bank suspected illegal activity or was restrained by a court order from

12   permitting a withdrawal.  There is nothing "extreme or outrageous" about complying

13   with the terms of a contract or a court order.

14        Muho also fails to allege that he suffered *severe* emotional distress.  *See*

15   *Fletcher*, 10 Cal. App. 3d at 396 (emotional distress is severe only if it is "of

16   substantial quantity or enduring qualify that no reasonable man in a civilized society

17   should be expected to endure it.").  Muho alleges that Citibank's actions "would

18   cause emotional distress," and he makes a vague reference to his self-inflicted

19   "impossible, exhausting, and fruitless journey."  *See* FAC, ¶¶ 93-94.  He also now

20   quotes an email from a friend who suggests that Muho may have suffered a

21   "psychotic episode" while he was interning at "the Firm."  *See id.* at ¶ 17.  This Court

22   should find that Muho has once again "failed to put forth specific factual allegations

23   establishing that he personally suffered severe or extreme emotional distress as a

24   result of Citibank's conduct."  *See* January 7, 2015 Order at 10:20-21.

25        Given the judgment in the New York Action, Muho simply cannot allege any

26   facts that would support an allegation of "extreme and outrageous" conduct by

27   Citibank.

28

### G.     Muho Fails To State A Valid Claim For Negligence

Nor has Muho stated sufficient allegations to support his new cause of action for negligence.  To establish a claim for negligence, Muho must show that: (1) Citibank owed him a legal duty; (2) that Citibank breached that duty; (3) that the breach was proximate or legal cause of Muho's injury; and, (4) damages.  *See Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).

Muho fails to allege any facts to support a breach of ordinary care by Citibank that proximately caused his injuries.  Muho makes the bare, conclusory assertions that "Citibank owed a legal duty to the Plaintiff to exercise ordinary care," and that "Citibank breach proximately caused Plaintiff's injury."  *See* FAC, ¶¶ 100, 102.  Muho's legal conclusions are insufficient to support his claim for negligence.

In addition, Muho fails to plead facts sufficient to support a finding that Citibank breached any duty.  Muho simply alleges that Citibank "failed to comply with it's [sic] the parties agreement," and "failed to comply with well-established clear and unambiguous laws of the State of California that governed the relationship between Plaintiff and the Bank."  *See id.* at ¶ 101.  As discussed above, however, Muho has not alleged any breach of the Account agreement.  Nor does Muho cite to any authority for his sweeping allegation that Citibank failed to comply with the laws of the State of California.  *See id.*

Citibank requests that Muho's Sixth Cause of Action without leave to amend.

### H.     Leave To Amend Should Be Denied

A court properly denies leave to amend where "the plaintiff cannot cure the basic flaw in [his] pleading . . . [and] any amendment would be futile."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (citing *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)).  The Court provided Muho with an opportunity to amend his complaint with clear instructions on how to proceed.  *See* January 7, 2015 Order at 11:5-10.  Muho has ignored the Court's order and instructions, instead adding several new paragraphs of irrelevant and incoherent

1 | allegations.  Any further opportunity to amend would be futile.

2 | **V.**     **CONCLUSION**

3 |    For the foregoing reasons, Citibank respectfully requests that the Court issue

4 | an Order dismissing the FAC, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

5 | Procedure.  Leave to amend should be denied, and judgment should be entered in

6 | favor of Citibank.

7 |

8 |            Respectfully submitted,

9 | DATED: April 7, 2015     SIMMONDS & NARITA LLP

10 |

11 |          By: _s/Liana Mayilyan_

12 |             Liana Mayilyan
               Attorney for Defendant
               Citibank N.A.

MUHO v. CITIBANK N.A. (CASE NO. 3:14-cv-03219-HSG)
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM IN SUPPORT                 21

**PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to this action. My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On this date, I served copies of the following documents:

1)  **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

by causing such documents to be placed in a sealed envelope for collection and delivery by the United States Postal Service to the addressee indicated below:

**VIA U.S. MAIL**

Gerti Muho
1300 Clay Street
Oakland, CA 94612

*Plaintiff, In Pro Per*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on this 7th day of April, 2015.

_____
William A. Klyver