GERTI MUHO
1100 BISCAYNE BLVD 5303
MIAMI, FL 33132
(212) 300-3826
GM@GMCAPITAL.NET

PLAINTIFF, PRO SE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERTI MUHO, | Case No. 4:14-cv-03219-HSG |
| Plaintiff, | **RESPONSE TO CITIBANK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| vs. | |
| CITIBANK N.A., | |
| Defendant. | |

# Table of Contents

I.     SUMMARY……………………………………………………………………………1

II.    LEGAL STANDARD……..………………………………………………..…………..5

III.    ARGUMENT……………………………………………….………………………..5

  A.  Breach of Contract. Plaintiff's Complaint properly alleges an implied contract ………………..5

    1.  Plaintiff has pled facts showing both that an implied common law contract existed between Plaintiff and Citibank and that an implied per-se contract existed between Plaintiff and Citibank……………….…………………………………………………………………6

    2.  Plaintiff has pled facts showing an implied contract existed between Plaintiff and Citibank, as a matter of law………………………………………………………………………....…8

    3.  Plaintiff alleged performance in compliance with his agreement with Citibank under California law and Citibank Committed Per-Se Breach of Its Agreement with Plaintiff, in addition to Conversion…………………………………………………………………....…8

4.  Plaintiff Alleges Facts Showing Citibank Breach of Contract—Notwithstanding Citibank's Per Se Breach of Its Agreement With Plaintiff in Violation of California Financial Code § § 952-954, 1450……………………………………………………………..…9

5.  Plaintiff alleges facts showing Citibank's breach caused Plaintiff's damages………………10

6.  Citibank's Written Agreement Violates the Law and is Against Public Policy……………...11

B.  Conversion of Plaintiff's Assets. Plaintiff has alleged facts showing conversion by Citibank of Plaintiff's property Per-Se and under common law principles ………………....……………..12

1.  Plaintiff has stated sufficient facts showing ownership and rightful possess over the property Plaintiff deposited in his Citibank account……………………………………………..……13

2.  Plaintiff has stated sufficient facts showing Citibank interfered with his ownership and rightful possession of his property by a wrongful act or by a disposition of rights to Plaintiff's property……………………………………………………………...………………..……13

3.  Plaintiff has alleged facts showing Citibank intended wrongful acts that interfered with Plaintiff's property and that Citibank intended the acts that caused its disposition of Plaintiff's property and Plaintiff's damages…………………………………………………………14

C.  Trespass to Chattels……………………………………………………………………...16

D.  Intentional Infliction of Emotional Distress…………………………………………..…17

    1.  Plaintiff's complaint has properly alleged Citibank's extreme and outrageous conduct…..…17

E.  Interference with economic relations……………………………………………………...19

F.  The TRO Issued Mid-October and the Default Judgment Issued Against Plaintiff April 4, 2014—Both of Which Citibank Uses As Its Shield Were Void Ab-Initio, Invalid, and Entirely Irrelevant to This Case……………………………………………………………………………...21

G.  Res Judicata Does Not Apply to Default Judgments and Res Judicata Does Not Apply to Default Judgments that are Void Ab Initio…………………………………21

PLAINTIFF'S RESPONSE TO CITIBANK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM – CASE NO. 4:14-CV-03219HSG

TABLE OF AUTHORITIES

CASE                                                                                    page(s)

*Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 498, fn.2 (1970)……………………………….….18

*ASP Properties Group v. Fard, Inc.*, 133 Cal.App.4th 1257, 1268–69,(2004)…………………………..5

*Aweeka v. Bonds*, 20 Cal.App.3d 278, 281—282 (1971)…………………….……………………….18

*Banaga v. Taylor Bean Mortgage*, No. C 11 40007 JSC, 2011 WL 5056985, at *3 (N.D.Cal.2011)……5

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)………………….………………………..5

*Bundren v. Superior Court*, 145 Cal.App.3d 784, 791—792 (1983)………………………………….18

*Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998)…………………………………………….13

*Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985)……………….…………………………….12

*Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.App.3d 593, 611 (1981)………………….…..6

*Department of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084, 1096 (1997)…..…..13

*eBay, Inc. v. Bidder's Edge*, 100 F.Supp.2d 1058, 1069—1070 (N.D. Cal. 2000)……………..…..…..16

*Enterprise Leasing Corp. v. Shugart*, Corp. 231 Cal.App.3d 737, 748 (1991)……………………..…..12

*Fletcher v. Western Life Insurance Co.*, 10 Cal.App.3d 376, 397 (1970)……………………...…..17, 18

*Granny Good Foods, Inc. v. Bth'd of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County*,

415 US 423, 994 (1974)……………………………………………………….…………………21

*Graybill v. Wells Fargo Bank*, N.A. 2013 WL 978245…………………………………………….8

*Hughes v. Pair*, 46 Cal.4th 1035, 1050—1051 (2009)…………………………...…………………17

*Jamgotchian v. Slender*, 170 Cal.App.4th 1384, 1400—1401 (2009)………………………………16

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)……………………………………..5

*McDaniel v. Gile*, 230 Cal.App.3d 363, 373 (1991)…………………………………………...18

*Molko v. Holy Spirit Ass'n.*, 46 Cal.3d 1092, 1122 (1988)……………….…………………………18

*Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (1990)……………………………………13

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990)…………………….19

*Plummer v Day/Eisenberg, LLP*, 184 Cal.App.4th at p. 45, (2010)…………………..………….12, 13

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 55 (1998)………………………………..19

*Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008)………………………………….12

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th 2 Cir. 1998)…………………………………5

*Tavernier v. Maes*, 242 Cal.App.2d 532, 552 (1966)……………………………………….…………14

*Troyk v. Farmers Group, Inc.*, (2009) 171 Cal.App.4th 1305, 1352…………………………..……….10

*Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1128 (1989)…………………………………………..17

STATUTE

California Civil Code §§ 1619-1621………………………………………………………………….6

California Financial Code § 40501……………………………………………………………….6, 8

California Financial Code § 1450…………………………………………………………….9, 13, 21

RULES

F.R.C.P. 11…………………………………………………………………………………………….3, 4

F.R.C.P. 12(b)(6)……………………………………………………………………………….…......5

F.R.C.P. 65(b)……………………………………………………………………………………..…21

OTHER AUTHORITIES

1. *John D. Calamari & Joseph M. Perillo "The Law of Contacts"* (4th ed. 1998)…………………….…5

GERTI MUHO
1100 BISCAYNE BLVD 5303
MIAMI, FL 33132
(212) 300-3826
GM@GMCAPITAL.NET

PLAINTIFF, PRO SE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERTI MUHO, | Case No. 4:14-cv-03219-HSG |
| Plaintiff, | **RESPONSE TO CITIBANK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| vs. | |
| CITIBANK N.A., | |
| Defendant. | |

## I. SUMMARY

Citibank has filed a motion to dismiss Plaintiff's complaint because it claims the complaint fails to allege rights for relief that the law can address. Citibank fails however to provide an argument for why it claims Plaintiff's complaint fails to allege a claim. Citibank's motion does not address any of the allegations of Plaintiff's complaint, and its claim for dismissal is supported by the names it calls Plaintiff throughout the memorandum of support Citibank filed with its motion to dismiss the complaint. Aside from name-calling, Citibank packs its memorandum of support with senseless conclusions of law and untrue statements of both law and fact that fall short of providing any logical support for Citibank's claim that this Court should dismiss Plaintiff's complaint.

Citibank's argument is that Plaintiff's complaint fails to state a claim because Plaintiff's complaint is the amended complaint of the original complaint Plaintiff filed against last year in California state

court and the changes in the amended complaint from the original complaint, *standalone*, fail to state a claim. And, as ridiculous an argument as that is, Citibank fails at even that when it fails to make a coherent argument for why Plaintiff's allegations as alleged in the changed parts of the new complaint, *standalone alone*, do not state a claim of negligence against it. Citibank writes in its memorandum of support that: ""[Plaintiff's] alleg[ations] that Citibank "failed to comply with it's [sic] the parties agreement," and "failed to comply with well-established clear and unambiguous laws of the State of California that governed the relationship between Plaintiff and the Bank."" fail to allege a claim because "As discussed above, however, [Plaintiff] has not alleged any breach of the Account agreement. Nor does [Plaintiff] cite to any authority for his sweeping allegation that Citibank failed to comply with the laws of the State of California." Citibank's Memorandum of Support p.20 (quoting Plaintiff's new complaint).

Setting aside the "Account agreement" matter that Citibank again claims Plaintiff incorporates by reference in his complaint since discussing it requires Citibank's motion first be treated as one for summary judgment and since Citibank's claims of its incorporation are pathetically incorrect and proof of criminal intent, not failure by Plaintiff to plead a negligence claim, Citibank's argument that negligence isn't pled is that Plaintiff has not "cite[d] to any authority" in his complaint that Citibank failed to comply with "well-established clear and unambiguous laws of the State of California." Three synonyms for 'you-better-say-you-don't-know-the-law' and Citibank files a motion requesting dismissal of the complaint because the facts alleged in the new complaint that were not alleged in the old complaint, *and those facts alone*, fail to alleged a claim for negligence because Plaintiff has not bluebooked the well-established clear and unambiguous laws we broke.

Plaintiff has not motioned this Court, however, for summary judgment against Citibank. After all this is a jury case. But even if he had motioned this Court for summary judgment against Citibank, Plaintiff's failure to cite to authority wouldn't be a reason to request his summary judgment motion be denied. Plus as Citibank says Plaintiff is too silly to even be a lawyer and is representing himself, *pro se*.

But, again, the legal standard is whether Plaintiff has alleged sufficient facts, as best he can, *in the entirety of the complaint*, to suggest it plausible that Plaintiff has suffered because Defendant has done something the law will recognize as wrong; not illegal, wrong.

Plaintiff's new complaint makes over one hundred allegations, mentioning Citibank over one hundred and fifty times in its entirety. If Plaintiff had used a computer program to randomly assign all the remaining words in the one hundred plus allegations Plaintiff makes in his new complaint, Plaintiff would have been highly likely to have pled a cause of action against Citibank. How could he not. He gave to Citibank over $500,000 for anytime, anywhere, anyplace, and was then told to wait, hold on, sit down, we can't, tomorrow, i don't wanna loose my job, i donno, come back, go f*c# yourself; or, maybe, wait, alternatively, here's a Verizon Wireless cellphone number to your branch manager roughneck from Coney Island you've never really met; sometimes her mother may pick up, but don't worry most of the times the phone just rings and rings forever and no one will answer anyway.

Plaintiff appears to have again in the one preceding paragraph only re-re-alleged enough facts to support every cause of action Plaintiff also alleged once in the original complaint, and also re-alleges in the new complaint. And like in his complaints, Plaintiff re-alleges all facts without once mentioning Torres, or the debit advice document that was created, or the debit advice account number found in the debit advice and in Torres's TRO that isn't Plaintiff's or anyone's account number, or the twenty four permanent injunctions and order, attachments, executions, discoveries, depositions, etc. that Torres issued, and all before the assigned Judge ever, ever, ever had a say; but that's another case, and Plaintiff doesn't mention Torres once in his complaints because Torres and her barrage of orders against Plaintiff came in about two months too late to be relevant to the Citibank case. But yes after Citibank knocked Plaintiff to the curve and kicked the crap out of him over and over again for 60 days or two months, *as alleged, re-alleged, and re-re-alleged above*, it is true that something maybe even worse than Citibank came along and tortured Plaintiff even more than Citibank, possibly, ever had.

Torres's orders, whichever of the orders of Torres Counsel of Citibank refers to, have never been registered in any court in any district in this State, and to date are not, and have never been, the law, or legally binding in this State. 28 U.S.C. 1963. So what possible relevance or legal significance can orders out of a banana boat Circuit have in this case is unclear. Citibank's citing of the order, moreover, is nothing more than Citibank's and its counsel's restless attempts to hinder, delay, and obstruct justice, at best.

Plaintiff is happy to cite to some authority for the Counsel of Citibank. California Code Section § 3519 states that "[h]e who can and does not forbid that which is done on his behalf, is deemed to have bidden it." So Counsel of Citibank should not hide behind the signature of his young aide, for this motion signed and filed to further hinder, delay, and obstruct justice is deemed to be his, whether he signs it or whether his aide does for him. Moreover, and more relevant to the merits of this Case, California Code Section § 1822 states that "[a] depositary must deliver the thing to the person for whose benefit it was deposited, on demand, … unless he has a lien upon the thing deposited, or has been forbidden or prevented from doing so by the real owner thereof, or by the act of the law, and has given the notice required by Section 1825." California Code Section § 1825 states that "[a] depositary must give prompt notice to the person for whose benefit the deposit was made, of any proceedings taken adversely to his interest in the thing deposited, which may tend to excuse the depositary from delivering the thing to him."

Citibank would moreover be well advised to stop calling Plaintiff a thief. Theft is violation of the criminal code, and Plaintiff has never been **charged** with theft, or any such a crime.

Lastly, since the legal standard is not whether Plaintiff states a claim in the changes to the original complaint that Plaintiff makes in the new complaint, but whether Plaintiff has alleged sufficient facts, as best he can, *in the entirety of the complaint*, to suggest it plausible that Plaintiff has suffered because Defendant has done something the law will recognize as wrong, and since Plaintiff's original response to

Citibank's first motion to dismiss showed that Citibank had done something the law recognized as wrong to Plaintiff's detriment on every single count then alleged, Plaintiff encloses his original response to below in further response to Citibank's motion to dismiss the Plaintiff's complaint.

## II. LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). A court should not grant dismissal unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th 2 Cir. 1998).

## III. ARGUMENT

**Breach of Contract. Plaintiff's Complaint properly alleges an implied contract.**

Plaintiff's complaint properly alleges an implied contract existed between him and Citibank, that Citibank breached such contract, causing Plaintiff's damages. Under California law "a contract requires parties capable of consent, the consent of those parties, a lawful object, and sufficient consideration." *Banaga v. Taylor Bean Mortgage*, No. C 11 40007 JSC, 2011 WL 5056985, at *3 (N.D.Cal.2011) (quoting *ASP Properties Group v. Fard, Inc.*, 133 Cal.App.4th 1257, 1268–69,(2004)). "The term 'contract' rarely refer[s] to the writing [of an agreement]…Usually, the reference is to the agreement; [any] writing being merely a memorial of the agreement." *John D. Calamari & Joseph M. Perillo, The Law of Contracts* § 1.1, at 3 (4th ed. 1998).

*California Civil Code §§ 1619–1621* provides that "[a] contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." "The formation of an implied contract can become an issue for the jury to decide: Whether or not an implied contract has been created is determined by the acts and conduct of the parties and all the surrounding circumstances involved and is a question of fact." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.App.3d 593, 611 (1981).

*California Code § 40501*, which is decidedly on point in this case, states that an "implied contract exist[s] between [a depositor]" and every "bank, savings association, credit union, or other financial institution operating in [California] maintain[ing] and servic[ing] demand deposit accounts." *California Code § 40501*.

**Plaintiff has pled facts showing both that an implied common law contract existed between Plaintiff and Citibank and that an implied per-se contract existed between Plaintiff and Citibank.**

Plaintiff in his complaint alleges he held a deposit account with Citibank. ¶12. Plaintiff alleges he opened his deposit account in Berkeley, California. ¶12. Plaintiff alleges that Citibank offered Plaintiff the most branches in the most major cities across the nation for Plaintiff to withdraw and deposit funds with ease. ¶12. Plaintiff alleges Citibank offered him a cup of coffee and that a Citibank banker further told him about all the "perks' of being a Citibank customer, and about all the various debit cards Citibank offered. ¶12.

Plaintiff further alleges that for four years Plaintiff used his Citibank deposit account for all his deposits. ¶12. During those four years Plaintiff alleges that Citibank gave Plaintiff access to his deposits, upon his demand, at any time, at any location, and without delay. ¶12. Plaintiff further alleges that access to his deposits, upon his demand, at any time, at any location, and without delay were the very terms of his agreement with Citibank. ¶12.

Plaintiff alleges he was shocked when Citibank refused his attempted withdrawal and his request for information. ¶¶ 13-15. It can be inferred that the shock arose from unexpected actions Plaintiff alleges

were not as the two parties had agreed ¶12. Plaintiff alleges he expected to be informed about the status of his accounts, and that he was denied such information. ¶13. Plaintiff alleges that he was surprised to be told to speak with Ms. Sinovic. ¶17. Plaintiff alleges that Ms. Sinovic was misrepresented by Citibank, that she did not appear to have the authority or the knowledge Citibank represented her to have, and that she did not even have a verifiable identity. ¶17. Plaintiff alleges that all these occurrences were new, that none had previously occurred during his four year relationship with Citibank, and that all shocked and surprised him. See ¶¶ 12-17. None were as agreed.

Plaintiff further alleges that he visited dozens Citibank branches in his efforts to close his account, unsuccessfully. ¶34 Plaintiff alleges facts that show he was humiliated and that he was treated like a criminal publicly without reason or cause. Id.  And that he was given neither reason or cause. Id. Plaintiff states Citibank never allowed him to close his accounts, and that Citibank employees always referred him, again and again, to a Ms. Sinovic—a person Citibank employees themselves were never able to reach. ¶¶ 26, 31, 34.

Lastly Plaintiff alleges that Citibank reversed payments made and processed to third parties, including two payment made to the U.S. Department of Education, wrongly ¶. Plaintiff alleges that Citibank reversed these processed payments weeks after the payments had been made and under false pretenses, claiming Plaintiff had written "fake checks."¶32.

Unquestionably, Plaintiff has pled sufficient facts to show a contract implied in fact existed between it and Citibank. Plaintiff has even alleged conduct—depositing of one's assets in a designated deposit account for four years—that induced Citibank—the other party— to infer Plaintiff assented to a contract implied-in-fact. ¶12. Plaintiff has further alleged conduct by Citibank—making Plaintiff's funds available on demand, at any time, at any place, without question, whatsoever—that induced Plaintiff— the other party to the implied in fact contract—to infer Citibank assented to a contract implied in fact

contract between them. ¶12. Thus, Plaintiff has alleged sufficient facts to allow a jury to find that an implied-in-fact contract existed.

**2. Plaintiff has pled facts showing an implied contract existed between Plaintiff and Citibank,** *as a matter of law.*

Plaintiff alleges in his complaint he held a deposit account with Citibank. ¶12. Plaintiff further alleges in his complaint that his deposit account was opened at a Citibank bank branch in Berkeley, California. ¶12. Plaintiff alleges in his complaint that for four years Plaintiff made deposits in his demand deposit account at Citibank, and plaintiff alleges that Citibank for four years performed "as agreed" with regards to the account Plaintiff opened at the Berkeley, California branch, and Plaintiff further alleged that Citibank for the first time refused to allow Plaintiff to withdraw funds from his account as of August 19, 2013. ¶¶ 12,13.

As a matter of law thus Citibank, a bank, operating in the State of California, under California Financial Code § 40501, which states that an "implied contract exist[s] between [a depositor]" and every "bank, savings association, credit union, or other financial institution operating in [California] maintain[ing] and servic[ing] demand deposit accounts." had a contract with Plaintiff that was an implied in fact contract.

**3. Plaintiff alleges his performance in compliance with his agreement with Citibank under California law and Citibank Committed Per-Se Breach of Its Agreement with Plaintiff, in addition to Conversion Per-Se.**

To state a claim for a breach of contract "a plaintiff must [allege] plaintiff performed his duties or was excused from performing his duties under the contract." *Graybill v. Wells Fargo Bank*, N.A. 2013 WL 978245.

Plaintiff has alleged facts in his complaint showing his performance under under his contract with Citibank. ¶12. Plaintiff opened a demand deposit account with Citibank. Citibank agreed to make available to Plaintiff deposits Plaintiff may from time to time make—or not make, in his account. ¶¶ 12, 13.

Plaintiff in his complaint alleges he made his deposits at Citibank. Id. Plaintiff it can be reasonably inferred made all deposits in a way and manner that complied with Citibank's way and manner of accepting deposits—for Citibank otherwise would have rejected Plaintiff's deposits. ¶¶ 10-13. Citibank did not and accepted Plaintiff's deposits *see* ¶ 12-13. And Plaintiff further alleges he used Citibank's customer service department and Citibank's branches in all his efforts to solve issues arising from his account or in all his attempts to close his accounts. ¶¶ 12, 13, 17, 22-29. In other words, Plaintiff throughout his complaint alleges he used customary channels at all times in his efforts to communicate and deal with Citibank—never uncle no-neck Joe or 'No-name' Sinovic—i.e., performed as agreed. *Id.*

Now, Plaintiff's dispute against Citco, FAM, JP Morgan, D.E. Shaw, Wilmington Trust, Angelo Gordon, Newscorp, and Quinn Emmanuel may be the most selfless, lopsided dispute in legal history. One undertaken by a kid one year out of law school. ¶12. But Plaintiff's dispute with his adversaries is not the first dispute to funds in a bank account in the history of California. So to the extent Citibank claims Plaintiff was obliged to Citibank to deposit only undisputed funds in his account, Plaintiff performance was excused by law, whereby the law excuses Plaintiff from the same.

Under California law § 1450 any bank in receipt of any and all notices of adverse claims to a customer's deposits to "disregard" any and all notices of adverse claims to its customer's deposit, and requiring it to continue to honor instructions by its customers and "on [customer] demand [to make] deliver[y]" to its the customer the customer's property and to continue to honor all "checks, notes, or other instruments requiring payment of money by or for the account of its [customer]."

Citibank thus by refusing to allow Plaintiff access to his deposits and by refusing to honor Plaintiff's demands, without any legal authority whatsoever,  blatantly violated the above listed Sections of the California Code and is in per-se violation of its agreement with Plaintiff; in addition, of course to being unquestionably liable for conversion of Plaintiff's deposits *as a matter of law.*

**4. Plaintiff Alleges Facts Showing Citibank's Breach of Contract—Notwithstanding Citibank's Per Se Breach of Its Agreement With Plaintiff in Violation of California Financial Code § 1450.**

9

Plaintiff alleges in his complaint that Citibank refused to allow Plaintiff to withdraw his funds. ¶¶ 11, 13. Plaintiff alleges Citibank customer service refused to provide Plaintiff with assistance. ¶ 14, 23. Plaintiff further alleges that Citibank directed him to speak to an Ivona Sinovic ("Ms. Sinovic") at a New York city phone number that, when called, rang endlessly without answer or answering machine, message, or identifier of any sort. Id. Plaintiff alleges that Citibank denied him access to his account, refused his demands for access or information for why access had been denied ¶¶ 11, 13. Plaintiff alleges on August 19, 2013 Citibank terminated Plaintiff's access to his Citibank account for the first time without cause or reason. Id. August 19, 2013 was thus the date of the breach. Plaintiff alleges Citibank took a bizarre series of acts as it denied Plaintiff access to his deposits. Id.  Plaintiff alleges Citibank failed to allow Plaintiff to withdraw or deposit funds into his Citibank account at all major cities as it had agreed to do. ¶¶ 12, 13. Plaintiff alleges Citibank's shiny debit card and perks, an element of the consideration for his agreement with Citibank, became of no use to him once Citibank refused him access to his account. See Id. Ultimately, Plaintiff has alleged in sufficient allegations, that if found to be true would show that Citibank took actions that violated its agreement with Plaintiff.

**6. Plaintiff alleges facts showing Citibank's breach caused Plaintiff's damages**

Plaintiff has alleged sufficient facts that Citibank's per-se breach of contract, and/or Citibank's standalone common law breach of contract caused him damages. "Implicit in the element of damage is that the defendant's breach caused the plaintiff's damage." *Troyk v. Farmers Group, Inc.*, (2009) 171 Cal.App.4th 1305, 1352

Still Plaintiff alleges that as a result of Citibank breaching its agreement, Plaintiff lost access to his account. ¶¶ 11, 13, 29, 43-45. Plaintiff's consequential damages flow from Citibank depriving him of access to his account. Plaintiff further alleges that Citibank robbed Plaintiff's possession—by robbing Plaintiff of his funds, and that Citibank robbed Plaintiff of his opportunity to recover for his investors

$200 million, which would have incurred Plaintiff personally a financial gain of 20-25% of the aforementioned sum.

**5. Citibank's Written Agreement Violates the Law and is Against Public Policy.**

Citibank introduces outside matters in its attempt to set aside Plaintiff's complaint. Citibank's motion should unquestionably be regarded as a 56(b) motion. Citibank attaches to its motion a written agreement, allegedly because Plaintiff referred to it in his Complaint.

It is an absurd lie that Plaintiff referred anywhere in the body of his complaint to any such a thing as a written contract that existed between Plaintiff and Citibank. In fact, throughout the body of Plaintiff's complaint, Plaintiff never once uses the word 'contract' to describe his agreement with Citibank. Plaintiff every time refers to his 'agreement' with Citibank—never to a 'contract'.

Citibank furthermore attempts to mislead this Court by making it appear as if Plaintiff signature is on the outside material that is the written contract that Citibank attaches to its motion. Citibank states that is has attached as exhibits to its motion to dismiss the complaint for failure to state a claim Plaintiff's "signed signature card" and "the written agreement" that it claims governed the account Citibank held for Plaintiff, making it appear by the proximity of the wording and the illusory association between the two as if the signed signature card bore some sort of a relationship to the bare, unsigned, unseen, and unknown to Plaintiff prior to it being attached to Citibank's motion to dismiss, purportedly as a written contract.

The written contract is not valid. Aside from the written agreement being unsigned, etc., the written contract is void or voidable under California law (i) for being too vague—what constitutes "suspected illegality," and it would also be void (ii) for being against public policy—it allows for a private person to usurp the role of the courts and allows a private person to forbid depositor's access to their accounts based on vague terms like "suspected illegality," and it also would be void (iii) for being against California law—whereas California law requires Citibank to "honor the checks, notes, or other

instruments requiring payment of money by or for the account of the person to whose credit the account stands and on demand shall deliver that property to, or on the order of, the person for whose account the property is held" notwithstanding any purported illegality.

Amusingly enough, Citibank's actions would most likely be in violation of its own written agreement for it is likely that somewhere in the written agreement there is a clauses stating that either party can close the account at any time and for any reason—which is something Citibank repeatedly refused to allow Plaintiff to do. ¶ 30.

**Conversion of Plaintiff's Assets. Plaintiff has alleged facts showing conversion by Citibank of Plaintiff's property Per-Se and under common law principles.**

Plaintiff establishes a claim for conversion if Plaintiff alleges facts showing (i) plaintiff's ownership or plaintiff's right to possession of the [converted] property at the time of the conversion (ii) the defendant's conversion by a wrongful act or disposition of property rights, and (iii) damages." *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008). "The first element of that cause of action is his ownership or right to possession of the property at the time of the conversion." *Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985).

"Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully." *Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985). "In a conversion action the plaintiff need show only that he was entitled to possession at the time of conversion" *Enterprise Leasing Corp. v. Shugart*, Corp. 231 Cal.App.3d 737, 748 (1991). "Neither legal title nor absolute ownership of the property is necessary. . . . A party need only allege it is 'entitled to immediate possession at the time of conversion. . . .'" *Plummer*, 184 Cal.App.4th at p. 45, (2010). "[A]ttorneys may maintain conversion actions against those who wrongfully withhold or disburse funds subject to their attorney's liens." *Id*. "A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the

12

property." *Department of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084, 1096 (1997).

"To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession" *Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (1990). "[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Plummer*, 184 Cal.App.4th at 50.

California law § 1450 states that any bank in receipt of any and all notices of adverse claims to a customer's deposits [shall] "disregard" any and all notices of adverse claims to its customer's deposit, and it [shall] continue to … honor all "checks, notes, or other instruments requiring payment of money by or for the account of its [customer]."

"Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).

**1. Plaintiff has stated sufficient facts showing ownership and rightful possess over the property Plaintiff deposited in his Citibank account.**

Plaintiff has alleged in his complaint that the funds in his Citibank account came from past deposits Plaintiff had made in his deposit account at Citibank. ¶¶ 6, 11-14. Plaintiff has alleged Plaintiff owned the funds Plaintiff deposited in his deposit account at Citibank. ¶¶ 5, 6, 14, 41.Plaintiff has further alleged that he is a investment advisor registered with the Securities and Exchange Commission and therefore has alleged the right to funds belonging to any of the funds listed in Schedule D of Plaintiff's Form-ADV, including Soundview Elite Ltd. and Vanquish Ltd. ¶¶ 5, 6, 41.

**2. Plaintiff has stated sufficient facts showing Citibank interfered with his ownership and rightful possession of his property by a wrongful act or by a disposition of rights to Plaintiff's property.**

Plaintiff alleges in his complaint that he deposited his funds in his deposit account at Citibank in order to keep them safe and to have them made available to him upon his demand, at anytime, and

without delay. ¶ 12. Plaintiff by making his deposits in his Citibank account therefore had consented to have Citibank hold his funds for him. Plaintiff alleges that he expected Citibank to return his deposits to him upon Plaintiff's   demand, and to do so without delay. ¶¶ 12-14.

Plaintiff, who controlled the funds he deposited in his Citibank account, willed and exercised his dominion and control over the funds, and chose them to be deposited at Citibank. Citibank thus derived any and all of its rights to Plaintiff's deposits from the Plaintiff himself. Or Citibank had rights to Plaintiff's deposits only insofar as Plaintiff chose to give it rights over his deposit. See ¶ 12.

Citibank surprised Plaintiff whereby Plaintiff alleges in his Complaint he did not expect Citibank to refuse his requests for his deposits, did not expect Citibank to refuse his requests for information about his deposits, and that he expected Citibank to act timely at all time with regards to his deposits. ¶¶ 11, 13-14, 22. Given (i) Plaintiff gave Citibank all its rights to his deposits, and (ii) given one is only surprised by the unexpected, Citibank acted and exercised rights over Plaintiff's deposits that were outside of Plaintiff's expectations and outside of Plaintiff's consent. "The absence of lawful consent,' said Mr. Justice Holmes, 'is part of the definition of an assault.' The same is true of…conversion…" *Tavernier v. Maes*, 242 Cal.App.2d 532, 552 (1966).

Citibank, by acting without consent, without legal right, wrongfully, and illegally, and outside and beyond the scope of the rights granted to it by Plaintiff, thus, assaulted Plaintiff and Plaintiff's proper and disposed Plaintiff of his rights to his property and his deposits.

**3. Plaintiff has alleged facts showing Citibank intended wrongful acts that interfered with Plaintiff's property and that Citibank intended the acts that caused its disposition of Plaintiff's property and Plaintiff's damages.**

Plaintiff has alleged facts that Citibank knew of its actions, intended its actions, and even purposefully took its actions. Plaintiff by alleging that Citibank refused as much as to provide Plaintiff with any information about his property, and by alleging that Citibank provided Plaintiff with information that was false in nature and wasteful in time, properly alleges sufficient facts to show that Citibank had repeated opportunity to know of its wrongful and illegal must have known of the

consequence of its actions and must have chosen them in order to achieve a non-economic, non-bargained for, non-legal, and non-contracted ends.

Plaintiff, who as shown properly alleges in his Complaint per-se and common law conversion by Citibank, also properly alleges damages he suffered in his Complaint. ¶¶ 28-29, 40-43.

Lastly, and rather importantly, Citibank undoubtedly converted Plaintiff's property when Citibank deprived Plaintiff of the ability to comply with a *valid and legal* Court order requiring Plaintiff pay a $400 filing fee for the benefit of and to preserve the interests of investment funds under his management. It should be noted that two of the funds Plaintiff was held responsible for and ordered by a *valid and legal* Court order to pay a $400 fee for were Soundview Elite Ltd. and Vanquish Fund Ltd. Plaintiff as alleged in Plaintiff's complaint and as clearly summarized by the Westlaw article attached to Plaintiff's complaint as an exhibit, sued Fletcher Asset Management, Inc., Citco Group Ltd., and others *for the benefit of the investors of his investment funds—including Soundview Elite Ltd. and Vanquish Ltd.*

Continuing on this most important effect of Citibank wrongful acts, Citibank's deprivation of Plaintiff's rights thwarted Plaintiff pursuit of the parties that had harmed its investors and prevented Plaintiff from complying with the second part of the *valid and legal* Court order issued to Plaintiff in that case, which required that Plaintiff *refile* the action on behalf of his investors' interests *with the help and aide of a California licensed attorney within 30 days of the ruling—or by September 4, 2013.* By *September 4, 2013,* however, Plaintiff had been denied access to his deposits by Citibank for sixteen full days. And as repeatedly alleged, Plaintiff had been denied access to his deposits without cause, legal entitlement, legal right, consent or justification by Citibank. Plaintiff

Plaintiff failed in his pursuit. Although Plaintiff did meet his $400 obligation to the Court, notwithstanding Citibank's refusal to allow Plaintiff access to his accounts. Plaintiff failed to meet the second prong of the Court order. And Plaintiff failed to recover for his investors, and also failed to recover his 20%-25% share of that recovery.

Given Plaintiff's failure, moreover, resulted by Plaintiff's failure to refile the case with a California licensed attorney, a relatively low bar which was set out for him, one would have expected Plaintiff's clients to have been angered with him. Without the additional context—that Plaintiff failure caused by Citibank blocking Plaintiff with access to Plaintiff's accounts—one would have expected Plaintiff's failure to have angered greatly those who stood to benefit from Plaintiff's aims in his lawsuit against FAM, Citco, et al.

Thus, given Plaintiff's failure, one could have expected Plaintiff's investors to have sued Plaintiff for his failure and their loss. They didn't. It was FAM and Citco that sued Plaintiff on September 27, 2013 (about 40 days after Citibank first blocked Plaintiff's accounts), and, as alleged in Plaintiff's complaint, the assigned Judge, Magistrate Nathaniel K Fox has yet to make a ruling on that case—the very same case Citibank claims now bars Plaintiff's causes of actions due to Res Judicata. ¶ 35. It doesn't. See *infra* and see also Motion to Vacate Void Judgment For Failure to Comply with the Rules of Civil Procedure, etc. filed this August 6, 2014 by Gerti Muho, *pro se*, included here at *Exhibit A*.

**Trespass to Chattels.**

Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." In cases of interference with possession of personal property not amounting to conversion, "the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or *the loss of its use*." *Jamgotchian v. Slender*, 170 Cal.App.4th 1384, 1400—1401 (2009). "In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge*, 100 F.Supp.2d 1058, 1069—1070 (N.D. Cal. 2000).

Citibank claims money is not a chattel as a matter of law. In support of its bold but baseless statement Citibank cites irrelevant and non-governing law that is not even directly on the point from the

Southern District of New York. Money is a chattel and personal property—including fungible property—constitutes a chattel.  Furthermore, as a matter of law and as a matter of fact Plaintiff was the owner of the chattel at the time Citibank trespassed on Plaintiff's rights and Plaintiff's rights were not questioned—either rightly or wrongly—until almost 40 days after Citibank first trespassed against them on August 19, 2013, when Plaintiff was for the first time ever sued by FAM and Citco, as discussed above.

**Intentional Infliction of Emotional Distress**

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community" *Hughes v. Pair*, 46 Cal.4th 1035, 1050—1051 (2009)."Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. Western Life Insurance Co.*, 10 Cal.App.3d 376, 397 (1970).

"[I]t is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances.' " *Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1128 (1989). "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Fletcher*, 10 Cal.App.3d at 397,

**Plaintiff's complaint has properly alleged Citibank's extreme and outrageous conduct**

Plaintiff's complaint alleges sufficient facts to allow a finding that Citibank's conduct was extreme and outrageous. "Behavior may be considered outrageous if a defendant (1) abuses a relation or position that gives him power to damage the plaintiff's interests; (2) knows the plaintiff is susceptible to injuries

through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress…" *Molko v. Holy Spirit Ass'n.*, 46 Cal.3d 1092, 1122 (1988). Relationships that have been recognized as significantly contributing to the conclusion that particular conduct was outrageous include: employer- employee *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 498, fn.2 (1970), *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 403—404 (1970), landlord-tenant *Aweeka v. Bonds*, 20 Cal.App.3d 278, 281—282 (1971), hospital-patient *Bundren v. Superior Court*, 145 Cal.App.3d 784, 791—792 (1983), attorney-client *McDaniel v. Gile*, 230 Cal.App.3d 363, 373 (1991), collecting creditors *Bundren*, supra, at p. 791, fn. 8.

Plaintiff has alleged sufficient facts to support a finding that Plaintiff and Citibank had a longstanding banking relationship. Plaintiff has alleged Plaintiff opened his Citibank account in 2009 before he entered law school in Berkeley, California. Plaintiff further alleges he used his Citibank account for four year for all of his deposits. Plaintiff alleges that during those four years he never had a problem with his Citibank account and that he only stopped using his Citibank deposit account after August 19, 2013, and only due to Citibank's bizarre acts on and after August 19, 2013. Thus it is evident that Plaintiff has alleged sufficient facts to support a finding a relationship existed between Plaintiff and Citibank that would be recognized as significantly contributing to the conclusion that particular conduct was outrageous.

Plaintiff has alleged sufficient facts to allow a finding that Citibank abused its position and its power to harm and damage plaintiff and plaintiff's interests. Plaintiff has alleged that Citibank's actions, among many things, ended Plaintiff's pursuit of Citco and FAM, and left Plaintiff penniless and helpless. Plaintiff has further alleged that Citibank usurped its position as holder of Plaintiff's money to debilitate Plaintiff's person and his trade, and to end or seriously bruise Plaintiff stellar career and trade. Plaintiff has further alleged that Citibank left Plaintiff moneyless, stole Plaintiff's funds, send Plaintiff chasing for ways to close his account, humiliated Plaintiff's person and his trade, repeatedly, and that Citibank left

Plaintiff stranded and in physical danger. Plaintiff has also given a prime example of how Citibank treated him like a thief during one of his multiple visits to a Citibank branch in his attempt to close his account. ¶¶ 21-26.

Plaintiff has also alleged that he suffered severe emotional distress when and as a result of Citibank's refusal to inform him about his accounts, when and as a result of Citibank's lying to Plaintiff and told Plaintiff to contact a person that had no information and no accountability over his account, when and as a result of Citibank's refusal to even acknowledge that there was something wrong with Plaintiff's account or that they were blocked, and when and as a result of Citibank's *throwing of his person out* of his Citibank home branch when Plaintiff visited the branch to make a withdrawal and close his account, primarily so that Plaintiff could on that day comply with a valid and legal court order issued to him. ¶¶ 21-26, 28-29, 31, 34, 70.

Given "[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Fletcher*, 10 Cal.App.3d at p. 397, Plaintiff's complaint alleges sufficient facts to allow a reasonable jury to find that severe emotional distress did exist and that Plaintiff suffered such distress as a result of Citibank blatantly wrongful, immoral, and illegal actions.

**Interference with economic relations.**

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990). "Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 55

(1998). Restatement Second of Torts, section 766A provides: "One who intentionally and improperly interferes with the performance of a contract between another and a third person by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." "Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations. We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if plaintiff's performance is made more costly or more burdensome. Other cases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference." *Pacific Gas & Electric Co.*, 50 Cal.3d at 1129.

Plaintiff has alleged in his complaint Plaintiff is registered with the Securities and Exchange Commission ("**SEC**") under the Investment Advisor's Act as an investment manager to a group of investment funds with about $300 million in private assets under management. ¶ 5. Under the Investment Advisor's Act the management of private investment funds requires that a written contract exist between the investment advisory firm and the investment funds it manages. See also ¶¶ 28-29, 61. It is presumed that Citibank, a sophisticated party with close close to a trillion dollars in assets under its management, was aware that Plaintiff managed his investment funds pursuant to a contract.

Plaintiff further alleges in his complaint that Plaintiff informed Citibank that Plaintiff was suing certain parties for $200 million that had been stolen from his investment funds. ¶¶ 28-29, 59-60. Thus Plaintiff's complaint alleges sufficient facts that show that Citibank had knowledge of Plaintiff's contract or agreement with third parties—here Plaintiff's investment funds. ¶¶ 28-29, 58-60.

Plaintiff's further alleges in his complaint that Plaintiff had a valid and lawful court order that recognized Plaintiff's standing to sue on behalf of his investment funds and that Plaintiff needed access

to his Citibank account in order to perform his court ordered duties for his investment funds. Plaintiff alleges in his complaint that Citibank had notice and awareness of such facts. ¶¶ 25-26, 28-29, 58-60.

**F. The TRO Issued Mid-October and the Default Judgment Issued Against Plaintiff April 4, 2014—Both of Which Citibank Uses As Its Shield Were Void Ab-Initio, Invalid, and Entirely Irrelevant to This Case.**

It is indeed fair and just that a bank suspected of (i) robbing its customer's deposits, with malice, (ii) violating the Sherman and the Clayton Acts, (iii) the California Cartwright Act, (iv) violating numerous sections of the California Code including § 1450 of the Financial Code, to be able to afford counsel to defend it in this action. It is truly unfortunate however that Citibank forbade Plaintiff the same treatment when it refused to allow Plaintiff the ability to pay for counsel to defend him against the frivolous lawsuit FAM and Citco filed against him in the Southern District of New York. The same suit that, while as Plaintiff states in his complaint, led to no ruling or action by the assigned Judge in that case, Magistrate Judge Nathaniel K Fox, unfortunately led to a bizarre TRO and to a bizarre Default Judgment issued against Plaintiff by an Analisa Torres, who to date has not ruled on Plaintiff's motion to vacate or set aside the default judgment against him in NYC.

In *Granny Good Foods, Inc. v. Bth'd of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County*, 415 US 423, 994 (1974) the Supreme Court held that where a temporary restraining order had been continued beyond the time limits permitted by Rule 65(b) and the required findings of fact and conclusions of law have not been set forth, the order is invalid.

**G. Res Judicata Does Not Apply to Default Judgments and Res Judicata Does Not Apply to Default Judgments that are Void Ab Initio.**

Dated:  April 28, 2014

Plaintiff, Gerti Muho

Gerti Muho
Pro Se