```
                                        Pages 1 - 13

           UNITED STATES DISTRICT COURT

         NORTHERN DISTRICT OF CALIFORNIA

    BEFORE THE HONORABLE HAYWOOD S. GILLIAM, JUDGE

GERTI MUHO,                     )
                                )
          Plaintiff,            )
vs.                             ) NO. C 14-3219 HSG
                                )
CITIBANK, N.A.,                 )
                                ) San Francisco, California
          Defendant.            ) Thursday
                                ) June 11, 2015
_____) 2:00 p.m.


              TRANSCRIPT OF PROCEEDINGS


APPEARANCES:


For Plaintiff:        GERTI MUHO
                      Appearing Pro Se




For Defendant:        SIMMONDS & NARITA LLP
                      44 Montgomery Street
                      Suite 3010
                      San Francisco, California  94104-4816
                  BY: MICHAEL R. SIMMONDS, ESQ.
                      LIANA MAYILYAN, ESQ.




Reported by:          BELLE BALL, CSR #8785, RDR, CRR
                      Official Reporter, U.S. District Court
```

| | |
|---|---|
| 1 | **THURSDAY, JUNE 11, 2015**                                    **2:00 P.M.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **THE CLERK:** We are calling CR-14-3219, Muho versus |
| 4 | Citibank N.A.  Please step forward and state your appearances |
| 5 | for the record, please. |
| 6 | **MR. SIMMONDS:** Good afternoon, Your Honor.  Michael |
| 7 | Simmonds for Citibank. |
| 8 | **THE COURT:** Good afternoon, Mr. Simmonds. |
| 9 | **MS. MAYILYAN:** Good afternoon, Your Honor.  Liana |
| 10 | Mayilyan for Defendant Citibank. |
| 11 | **THE COURT:** Good afternoon. |
| 12 | **MR. MUHO:** Hello, Your Honor.  Gerti Muho for pro se |
| 13 | Plaintiff. |
| 14 | **THE COURT:** All right.  Good afternoon, Mr. Muho. |
| 15 | So, we're here for a hearing on Defendant's motion to |
| 16 | dismiss.  I've read the papers and the record in the case. |
| 17 | And, really have a factual question for the parties. |
| 18 | As I read the record, starting in October, 2013, there was |
| 19 | an order of attachment that was issued by the New York court. |
| 20 | In my view, after that point, the issue presented by Mr. Muho's |
| 21 | complaint is foreclosed, in essence.  After that point, there |
| 22 | was a court order that limited Citibank's right and ability to |
| 23 | release any of the funds. |
| 24 | The question is, it appears that the complaint alleges |
| 25 | that the initial denial of withdrawal of funds occurred in |

1   August, 2013.  August 19th.  And so the question is for the
2   Defendants:  Do you think that that's an inaccuracy?
3       And if that is accurate, what would be the basis for
4   denying withdrawal of the funds in that interim period before
5   there was a court order?
6       **MR. SIMMONDS:**  Well, Citibank's basis for doing so was
7   a suspicion of fraud and illegality, which, the Citibank
8   contract permits it to refuse disbursement under those
9   circumstances.
10      **THE COURT:**  Well, so specifically, what was the basis
11  for that suspicion in August of 2013?
12      **MR. SIMMONDS:**  It's my understanding that Citibank was
13  notified of this illegal transfer of funds from the HSBC Monaco
14  which occurred several weeks earlier.  I believe it's on --
15  it's in the complaint in the *Soundview* case, but I believe it
16  was August 8th.
17      And so that money disappeared from Monaco on August 8th,
18  and went to Citibank.
19      **THE COURT:**  All right.  And so is it -- is it
20  Citibank's position that as a matter of law, you're immune from
21  suit in the period before the order issued from the New York
22  court, based on the contract?
23      It seems to me that, arguably, there's a question of fact
24  there to be resolved past the motion-to-dismiss stage.
25      **MR. SIMMONDS:**  Citibank is well aware of the fact that

1  we're not here on motion for summary judgment.  That if we
2  were, there were would be an affidavit in the record that
3  spells out the fact that they did suspect the fraud, and that's
4  why they froze the funds at that time.  It's -- it's -- having
5  read the complaint over and over, we concluded that we could
6  probably win a motion to dismiss without that.
7       That's why there isn't anything like that in the record,
8  because I think that -- you know, as opposed to, for example, a
9  request for judicial notice which we can do on a motion to
10 dismiss, or bringing the contract in on the incorporation rule
11 which we can do on a 12(b) motion, we really couldn't go that
12 last step.  So we tried to identify other flaws in the
13 pleading.
14      **THE COURT:**  What are the other flaws that would permit
15 a dismissal?
16      **MR. SIMMONDS:**  Well, the contract claim here purports
17 to be a breach of an implied contract.  And the order
18 dismissing the original complaint identified or agreed that he
19 had failed to identify specifically in that complaint any
20 details surrounding the nature of this purported implied
21 contract, and whether it was written or oral.
22      If it's an implied one, he doesn't deny that there was a
23 signature card and an express one in existence.  He doesn't
24 allege what happened to that agreement, and was therefore
25 replaced by the implied one.  These were the things that the

1   Court on the original complaint found defective and needed to
2   be cured on amendment.  And they weren't.
3       I also urged at that time that this breach-of-contract
4   claim, just to take the first cause of action, it did not
5   allege that he had performed everything that he had to perform
6   under the contract.  It is a standard allegation.  Usually it's
7   pled quite plainly, broadly, conclusorily.
8       But in this particular situation where we have this
9   established fact that the -- there's a contract clause that
10  permits what happened to be done in the case of illegality, I'd
11  say that a person in Mr. Muho's position ought to be alleging:
12  "I performed everything that I needed to perform on my part
13  under the contract, and that included not using my account for
14  illegal purposes."  And he -- he doesn't go near that in any of
15  his allegation.
16      **THE COURT:**  All right.  So, Mr. Muho, the point that
17  is well-taken is that Judge Rogers issued a detailed order in
18  this case, and explained what you would need to do in order to
19  state a claim.
20      And obviously, you being a pro se litigant, the law tells
21  me that I have to -- to view your -- your pleadings with some
22  understanding of your status.  But the law is also clear that
23  ultimately your obligation is to meet the requirements of the
24  Federal Rules in a way that a lawyer would have to if you had a
25  lawyer.  And so, I do read the amended complaint that you filed

1   not to fully respond to the order that the Court entered
2   earlier.
3       And what I would strongly advise you to do is to visit the
4   pro se help center that this Court maintains.  There is an
5   attorney there whose job it is to help pro se litigants put
6   together their case.
7       And, here, I would -- I really think that that's something
8   that would be beneficial to you in being able to -- to
9   understand the requirements of pleading in this Court, and to
10  engage with the order that Judge Rogers issued -- and I agree
11  with her order -- to be sure that your case is pled in a way
12  that meets all the standards.
13      Are you willing to do that?
14      **MR. MUHO:**  Your Honor, I'm willing to do whatever it
15  takes for the truth to come out.  That's for certain.  But I'm
16  also not willing to recede or give up certain parts of law that
17  I think are completely unfair.
18      First and foremost, to go back to the order that was
19  issued by the Southern District of New York.  Now, I understand
20  that once an order of a court has been issued, a bank is
21  required to follow.
22      But, if you noticed in the last -- in the reply that they
23  made -- that they wrote, I put -- I cited a certain section of
24  Title 28, where execution needs to be perfected in a different
25  -- you know, to get a foreign judgment perfected in a different

1  district.

2  And counsel for Citibank replied, saying: Well, that
3  doesn't matter; this is not an execution. You know, this is
4  not about execution, this is about just -- you know,
5  recognizing the order.

6  Well, but what -- but we are here because the execution
7  has occurred. So if the order doesn't meet the execution
8  standards, why are we here -- I mean, they have clearly done
9  something that doesn't meet the execution standards.

10  And that's why now he comes back and says: Well, this is
11  not execution. Well, yeah, because if you can't file an
12  execution, we wouldn't be here. To begin with.

13  Then there's another practice that -- it's widely
14  practiced by the banks, and I -- I really feel strongly morally
15  not to give that up, which is basically -- and I can attest,
16  when I filed this complaint, I mean, I filed a verified
17  complaint, and that requires -- required me to notarize it.

18  I went to a Wells Fargo Bank, which was my bank at the
19  time. And I asked for the complaint to be notarized. And they
20  said that: We can't do it, because there's a conflict of
21  interest.

22  I thought it was a conflict of interest with the notary
23  shop next-door. But no, it turned out to be a conflict of
24  interest with Citibank. Because Citibank was their, sort of,
25  joint -- conjoint -- different, you know, color, red and blue.

1    But, so there was a conflict of interest where I was their
2    customer, yet they wouldn't notarize something that they offer
3    to customers, you know, because it affected another co --
4    co-party?
5         I mean, I don't even want to -- and then there's this
6    practice where they -- they -- Wells Fargo is particularly
7    known for this -- that they trawl, so to speak, but they guard
8    bankruptcy filings.
9         And the moment they see a name that's filed for
10   bankruptcy, they freeze their accounts because they figure in
11   the end that money will -- they will be the creditor sooner or
12   later, so it's good for them to block someone who has
13   immediately filed bankruptcy, even though -- you know, without
14   even having any right to do so, whatsoever.  And they get away
15   with it, over and over again.
16        **THE COURT:**  So, Mr. Muho, let me stop you.  This case
17   isn't about Wells Fargo.
18        **MR. MUHO:**  I understand.
19        **THE COURT:**  And see, that's the challenge, is that
20   we've got to put a box here.  And the box is your case, right?
21        And so what I want to be sure is that you have a full
22   opportunity to make your case that involves Citibank.  Because
23   that's what's at issue here.  Not Wells Fargo.
24        And so, again, what I would strongly recommend that you do
25   is take the amended complaint, take the order that Judge Rogers

issued in this case, and visit the self-help center, the pro se help center. We can give you the information about where that is. It's right in this building.

Because -- and I know this is hard, and it's hard to understand as a non-lawyer, but what I am required to do is ensure that the complaint, the piece of paper that you file, is sufficient under the law, and gives notice to the other side as to what the nature of the claim is. And that's the starting point.

And right now, you've had your complaint dismissed once. And we need to be sure that the complaint is clearly and adequately stated in response to the issues that Judge Rogers pointed out in her order. And that's the first step.

And I think that your -- what I would advise is that speaking to the pro se staff here could help you do that.

**MR. MUHO:** I'm -- I'm happy to comply. And I do have to get to the point -- to a point with that, is that when they received the order in October, I mean, at the time I saw it, it was very impressive. However -- and I had no idea about court orders, what they looked like or anything.

When I realized that what I was looking at was a TRO that even though it was supposed to expire 15 days after, it was being used by Wells Fargo six months later to block my --

**THE COURT:** Mr. Muho, don't --

**MR. MUHO:** But, again, that's what they used.

1    **THE COURT:**  Mr. Muho, but what --

2    **MR. MUHO:**  If I give --

3       (Simultaneous speakers)

4    **THE COURT:**  Mr. Muho, we can't talk at the same time.

5    **MR. MUHO:**  Sorry.

6    **THE COURT:**  The case isn't about Wells Fargo.  And so
7    I -- I don't know how I can be clearer with you about what I
8    think you need to do.

9       If you would prefer not to have that conversation with the
10   pro se folks, that's, of course, your choice.  But I need to
11   make a decision as to how the case will go forward.

12      And, you know, I'm simply saying that I'll provide that
13   information to you so that you can have that conversation, if
14   that's something that you are interested in doing.

15   **MR. MUHO:**  I am.  But there's also one more thing
16   about the original order.

17      Three times, Judge Gonzalez wrote that for $40,000, the
18   suit is not -- the damages that are being sought are
19   200 million.  And I understand that that's exactly what would
20   happen if we pass the stage because, you know, I have not
21   over-sued.  I've under-sued, if anything.

22      Now, the problem is that I know very well where that
23   40,000 figure came from.  So, to be honest, and I've already
24   called Judge Gonzalez's order not -- not without third-party
25   input, so to speak.  And I know exactly where that third-party

1   input came from, which was the Trustee, Jones Day, because she
2   was the only person to whom I told on the phone.  And I bragged
3   about how I, for $40,000, was going to be taking, you know,
4   200 million from Citibank.  And she got very annoyed about
5   that.
6       But the fact is, I did not know how much I was suing them
7   for, because I could have sued from -- anywhere from 10 or
8   20,000, which I had, to up to 500.  They didn't know, because I
9   didn't put it there, on purpose.
10      So if the order by Judge Gonzalez three times -- three
11  times, as if it even matters, which is irrelevant -- says that
12  for $40,000 Plaintiff is seeking 200 million, which he will get
13  past this stage -- and again, this is sort of like:  How much
14  damage did the terrorists cause with 9-11?  Was the damage the
15  cost of the place?  Or was it the cost of everybody being
16  afraid to go to work the next day?  It was irrelevant.
17      Even a penny wrongly withheld causing that much damage is
18  still a penny that caused that much damage.  $40,000 is a
19  significant sum, by all means.  But it wasn't 40.  It was
20  anywhere from 10 to 500.  And I had not decided it.  So to the
21  extent that I -- I am happy to comply.
22      Also, one more thing:  I still to date have no idea what
23  contract they are speaking about.  I have not read it.  I have
24  never been shown it.  I don't know where to find it.  I mean,
25  this is sort of like they have a legal department somewhere in

1  North Dakota that sort of makes themselves happy by putting
2  together all the kind of how far we can take it.
3      But, why would I have any idea what it is?  When I went to
4  the bank, it was all about coffee, it was all about debit
5  cards, and it was all about access.  And we didn't talk about a
6  thing other than those three.
7      Now, all of a sudden, they bring out this contract?  And
8  they suspect -- I can tear that contract apart a million
9  different ways.  That is so illegal, it's just -- it's
10 abhorrent.
11     But, I don't want to go there, because I am never, ever,
12 ever -- how can I be -- you know, it's as if I'm all of a
13 sudden required to comply with contracts -- if I can have the
14 same contract -- they have been accused of illegality.  They're
15 being accused of illegality in this case.  They have been
16 accused of illegality in many other cases.  Have -- did I?
17     You know, my contract would be just theirs?  But with, you
18 know, different terms and against different -- and, you know.
19 To the extent that they ever commit crime or are suspected of a
20 crime, or suspected of, you know, do -- packaging mortgages
21 that they know are insufficiently well priced, then to that
22 extent, then they owe me all the money that they have for the
23 damages that they've caused me.
24         **THE COURT:**  Okay.
25         **MR. MUHO:**  Sorry.  I know -- I'm veering off now,

1  but -- yeah.
2      **THE COURT:**  No.  So, I'm prepared to take the motion
3  under submission, and will issue a ruling as promptly as I can.
4       And you know, again, if you're interested in visiting the
5  pro se center while you're here, we can give you the
6  information about where that is.
7       Madam Clerk, what floor is that office on?
8      **THE CLERK:**  The 16th.
9      **THE COURT:**  All right.  So, I would advise you that
10 that service is available on the 16th Floor.
11     **THE CLERK:**  Fifteenth Floor; I'm sorry.
12     **THE COURT:**  All right.  Submitted.
13     **MR. SIMMONDS:**  Thank you, Your Honor.
14     **THE COURT:**  All right.
15     **MR. SIMMONDS:**  Thank you, Your Honor.
16     **THE COURT:**  All right.  Thank you.
17      (Proceedings concluded)

```
 1
 2
 3
 4                    **CERTIFICATE OF REPORTER**
 5          I, BELLE BALL, Official Reporter for the United States
 6   Court, Northern District of California, hereby certify that the
 7   foregoing is a correct transcript from the record of
 8   proceedings in the above-entitled matter.
 9
10                    /s/  Belle Ball_____
11              Wednesday, September 16, 2015
12              Belle Ball, CSR 8785, CRR, RDR
13
14
15
16
17
18
19
20
21
22
23
24
25
```